UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\------------------------------------------------------------- X

| | |
|---|---|
| OHAN KARAGOZIAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : 10 CV 5482 (RMB)(FM) |
| | : |
| COTY US LLC, a/k/a COTY INC., | : |
| | : |
| Defendant. | : |

\------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Attorneys for Defendant

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

STANDARD OF REVIEW ..................................................................................... 5

ARGUMENT ........................................................................................................ 6

I       PLAINTIFF'S ERISA CLAIMS SHOULD BE DISMISSED ..................................... 6

      A.      Plaintiff's ERISA Claims Are Untimely .......................................... 6

      B.      Coty's Classification of Plaintiff as an Independent
            Contractor Does Not Violate ERISA Section 510 ............................ 7

II      PLAINTIFF'S FLSA CLAIMS SHOULD BE DISMISSED ....................................... 8

      A.      Plaintiff Waived His Rights under the FLSA
            by Entering into the Stipulation ..................................................... 8

      B.      Plaintiff's FLSA Overtime Claim Is Moot ...................................... 9

      C.      Plaintiff Cannot Recover for Coty's Alleged Failure
            to Apprise Him of His Rights under the FLSA .............................. 11

III    PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED ...................................... 11

      A.      Plaintiff Fails to Plead Mail Fraud with Particularity ...................... 12

      B.      Plaintiff Lacks Standing under RICO ............................................. 16

      C.      Plaintiff's RICO Claims Are Preempted ........................................ 18

      D.      Plaintiff's RICO Claim Is Untimely .............................................. 19

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alnwick v. European Micro Holdings, Inc.*,
281 F. Supp. 2d 629 (E.D.N.Y. 2003)......................................................................13, 14 & 16

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .............................................................................................................5

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y.2009)......................................................................................5

*Barrus v. Dick's Sporting Goods, Inc.*,
No. 05-CV-6253 (CJS), 2010 WL 3075730 (W.D.N.Y. Aug. 5, 2010) ...............................17

*Beck v. Prupis*,
529 U.S. 494 (2000).............................................................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................5, 15

*Brennan v. Metropolitan Life Ins. Co.*,
275 F. Supp. 2d 406 (S.D.N.Y. 2003)....................................................................................6

*Cavallaro v. UMass Memorial. Health Care, Inc.*,
No. 09-40152-FDS, 2010 WL 3609535 (D. Mass. July 2, 2010)..........................................15

*Cave v. East Meadow Union Free School Dist.*,
514 F.3d 240 (2d Cir. 2008)...................................................................................................6

*Choimbol v. Fairfield Resorts, Inc.*,
No. 2:05-CV-463, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006)..........................................18

*Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*,
271 F.3d 374 (2d Cir. 2001)..................................................................................................17

*Conte v. Newsday, Inc.*,
No. 06-CV-4859 (JFB)(ETB), 703 F. Supp. 2d 126,
2010 WL 1257887 (E.D.N.Y. Mar. 25, 2010) ..............................................................13, 14

*Downes v. JP Morgan Chase & Co.*,
No. 03-CV-8991 (GEL), 2004 WL 1277991 (S.D.N.Y. June 8, 2004) .......................6, 7 & 8

*Eldred v. Comforce Corp.*,
No. 3:08-CV-1171 (LEK/DEP), 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) ................13, 18

*Gibson v. Craigslist, Inc.*
No. 08-CV-7735(RMB), 2009 WL 1704355 (S.D.N.Y. June 15, 2009) ................................. 5

*Gifford v. Meda,*
No. 09-cv-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010) ........................................ 19

*Greenes v. Empire Blue Cross & Blue Shield,*
No. 92-CV- 8599 (KMW), 1996 WL 640873 (S.D.N.Y. Nov. 4, 1996) ............................... 14

*Hemi Group, LLC v. City of New York, N.Y.,*
130 S. Ct. 983 (2010) ........................................................................................................... 16

*In re Merrill Lynch Ltd. Partnerships Litigation,*
154 F.3d 56 (2d Cir. 1998) ................................................................................................... 19

*Leung v. Law,*
387 F. Supp. 2d 105 (E.D.N.Y. 2005) ........................................................... 13, 14, 16 & 17

*Lignore v. Hospital of the University of Pennsylvania,*
No. 04-5735, 2007 WL 1300733 (E.D. Pa. May 1, 2007) ................................................. 9, 10

*Martin v. Pepsiamericas, Inc.,*
No 1:07-CV-91-SA-JAD, 2009 WL 4728694 (N.D. Miss. Dec. 3, 2009) ....................... 10, 11

*Mathon v. Feldstein,*
303 F. Supp. 2d 317 (E.D.N.Y. 2004) .................................................................................. 14

*McGee v. State Farm Mut. Auto. Ins. Co.,*
No. 08-CV-392 (FB)(CLP), 2009 WL 2132439 (E.D.N.Y. July 10, 2009) .......................... 15

*McLaughlin v. American Tobacco Co.,*
522 F.3d 215 (2d Cir. 2008) ................................................................................................. 19

*McLaughlin v. Anderson,*
962 F.2d 187 (2d Cir. 1992) ............................................................................................ 12, 15

*McLellan v. E.I. DuPont de Nemours & Co., Inc.,*
No. 04-CV-314, 2006 WL 3751583 (W.D.N.Y. Dec. 19, 2006) ........................................... 8

*Medley v. American Cancer Soc.,*
No. 10-CV-3214 (BSJ), 2010 WL 3000028 (S.D.N.Y. July 23, 2010) .................................. 8

*Moore v. PaineWebber, Inc.,*
189 F.3d 165 (2d Cir. 1999) ................................................................................................. 13

*Moss v. Morgan Stanley Inc.,*
719 F.2d 5 (2d Cir. 1983) ..................................................................................................... 12

*Murawski v. Pataki,*
514 F. Supp. 2d 577 (S.D.N.Y. 2007) .................................................................................... 5

*Nichols v. Mahoney*,
    608 F. Supp. 2d 526 (S.D.N.Y. 2009)...................................................................... 18

*Norman v. Niagara Mohawk Power Corp.*,
    873 F.2d 634 (2d Cir. 1989)................................................................................... 18

*O'Malley v. New York City Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990)............................................................................ 15, 16

*Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*,
    170 F.R.D. 361 (S.D.N.Y. 1997) .......................................................................... 14

*Pisani v. Westchester County Health Care Corp.*,
    424 F. Supp. 2d 710 (S.D.N.Y. 2006).................................................................... 5

*Raghavendra v. N.L.R.B.*,
    No. 08-CV-8120 (PAC)(HBP), 2009 WL 5908013 (S.D.N.Y. Aug. 27, 2009) .............. 5

*Reasoner v. All Seasons Pool Service, Inc.*,
    No. 6:06-cv-1819-Orl-19DAB, 2007 WL 4326808 (M.D. Fla. Dec. 7, 2007) ............. 10

*Red Ball Interior Demolition Corp. v. Palmadessa*,
    874 F. Supp. 576 (S.D.N.Y. 1995)........................................................................ 17

*S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996).................................................................................. 15

*Sandberg v. KPMG Peat Marwick, L.L.P.*,
    111 F.3d 331 (2d Cir. 1997)................................................................................... 6

*Sengillo v. Valeo Elec. Systems, Inc.*,
    328 Fed. Appx. 39 (2d Cir. 2009) ......................................................................... 6

*Shields v. Citytrust Bancorp., Inc.*,
    25 F.3d 1124 (2d Cir. 1994).................................................................................. 16

*Skylon Corp. v. Guilford Mills, Inc.*,
    No. 93-5581 (LAP), 1997 WL 88894 (S.D.N.Y. Mar. 3, 1997)................................. 14

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
    655 F. Supp. 2d 212 (E.D.N.Y. 2009).................................................................... 15

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998).............................................................................................. 11

*Umland v. PLANCO Financial Services, Inc.*,
    542 F.3d 59 (3d Cir. 2008).................................................................................. 18

*Vandermark v. City of New York*,
    615 F. Supp. 2d 196 (S.D.N.Y. 2009).................................................................... 17

*White v. White Rose Food, a Div. of DiGiorgio Corp.*
    62 F. Supp. 2d 878 (E.D.N.Y. 1999) ................................................................. 18

## STATUTES

18 U.S.C. § 2 ........................................................................................................ 11

18 U.S.C. § 1341 .................................................................................................. 15

18 U.S.C. § 1961 .................................................................................................. 12

18 U.S.C. § 1962(a) ............................................................................................. 11

18 U.S.C. § 1964 .................................................................................................. 11

18 U.S.C. § 1964(c) .............................................................................................. 1

26 U.S.C. § 6041A ............................................................................................... 19

29 U.S.C. § 216(c) ............................................................................................... 8

29 U.S.C.  § 255(a) .............................................................................................. 10

Fed. R. Civ. P. 9(b) ................................................................................... 2, 12, 14, 16

Fed. R. Civ. P. 12(b) ..................................................................................... 1, 4

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 5

Fed. R. Civ. P. 12(b)(3) ....................................................................................... 6

Fed. R. Civ. P. 12(b)(6): ...................................................................................... 5

Preliminary Statement

Plaintiff Ohan Karagozian ("Plaintiff") – who provided services to defendant Coty Inc.

("Coty" or the "Company")[1] on an independent contractor basis from 2002 to 2008 – purports to

assert claims against the Company for alleged violations of (i) the Fair Labor Standards Act

("FLSA"); (ii) Section 510 of the Employee Retirement Income Security Act ("ERISA"); and,

(iii) 18 U.S.C. Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act

("RICO"), by dint of an alleged violation of RICO's mail and wire fraud provisions.  The

common thread running through all of Plaintiff's claims is his alleged misclassification by Coty

as an independent contractor rather than as an employee of the Company.  None of Plaintiff's

claims, however, can withstand Coty's instant motion to dismiss under Rule 12(b) of the

Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

First, Plaintiff's ERISA claim is barred for two reasons:  (i) it was not filed within two

years of the date Plaintiff was classified as an independent contractor rather than as an employee

(*see* Point I.A, *infra*), and (ii) § 510 does not provide any remedy for misclassification as an

independent contractor (s*ee* Point I.B, *infra*).

Although Plaintiff also brings claims pursuant to various theories under the FLSA, none

has merit.  Plaintiff's claims for back overtime and other damages are barred by the terms of the

stipulation he signed with Coty and the New York State Department of Labor ("NYSDoL"),

dated January 19, 2010 (the "Stipulation") (*see* Point II.A, *infra*).  Further, even assuming

*arguendo* that the Stipulation did not constitute a waiver of Plaintiff's rights under the FLSA, the

monies paid Plaintiff under the Stipulation exceed the maximum damages recoverable by him

under that statute, effectively mooting his FLSA claim and depriving this Court of subject matter

jurisdiction over such claim (*see* Point II.B, *infra*).  Finally, there is no remedy under the FLSA

---

[1]     Coty is incorrectly named in the caption as "Coty US LLC a/k/a Coty Inc."

for Coty's alleged failure to properly disclose or apprise Plaintiff of his rights under the statute (*see* Point II.C, *infra*).

Plaintiff's claims under RICO are likewise deficient.  As a threshold matter, Plaintiff has not pled mail fraud with particularity as required by Fed. R. Civ. P. 9(b) (*see* Point III.A, *infra*).  Plaintiff also has no standing under RICO because he has not alleged that he was injured by the purported predicate acts (*see* Point III.B, *infra*).  Moreover, Plaintiff's RICO claims are pre-empted by the FLSA and other federal laws (*see* Point III.C, *infra*).  Lastly, such claims are barred by the applicable statute of limitations (*see* Point III.D, *infra*).

For the reasons set forth in greater detail below, Coty respectfully submits that Plaintiff's claims in this action should be dismissed in their entirety.

<u>Statement of Facts</u>[2]

According to his amended complaint in this action, Plaintiff commenced employment with Coty "on or about October 21, 2002, in the position of 'help desk support technician'" (Am. Cmplt., ¶ 10).  Coty classified Plaintiff as an independent contractor rather than as an employee of the Company (*id.*, ¶ 12).  Plaintiff alleges that Coty sent him an IRS Form 1099 each year of his employment, rather than a W-2 form (*id.*, ¶ 21).

On or about July 30, 2008, Plaintiff submitted a written request to Coty seeking reclassification as an employee (*id.*, ¶ 15).  Plaintiff's request was communicated to Coty via a letter from his counsel, which provided, in pertinent part (Sheinfeld Decl., Exh. A.):

> Mr. Karagozian has been employed by Coty US LLC ("Coty") as a
> computer technician since October 21, 2002, but has been mis-classified
> since the date of his hire as a "consultant."  Notwithstanding that
> Mr. Karagozian has been mis-classified as an independent contractor since

---

[2]    This Statement of Facts is based on the allegations of Plaintiff's amended complaint in this action, dated November 11, 2010 ("Am. Cmplt."), which are assumed true solely for purposes of the instant motion, as well as various materials referenced in the amended complaint.  Copies of the original complaint in the action, dated July 19, 2010, the amended complaint and such referenced materials are attached to the accompanying Declaration of Stephen L. Sheinfeld, dated November 26, 2010 ("Sheinfeld Decl.").

his hire, he functions in all respects as an employee of Coty, working exclusively for Coty and under the supervision, direction and control of Coty management at all times.  As such, we believe Mr. Karagozian has been deprived of benefits he is entitled to as an employee of Coty and that Coty has violated, *inter alia*, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act and the New York State Labor Law.

There are a variety of wage entitlements and employee benefits which Mr. Karagozian has been deprived of due to this mis-classification.  These damages are roughly estimated to aggregate $135,640 at this time, exclusive of interest, penalties, statutory damages and attorneys' fees.  Additionally Mr. Karagozian's mis-classification should be immediately corrected, and he should now and hereafter be re-classified as an employee with the full benefits and entitlements attendant to such position.

Plaintiff alleges that his employment with Coty was terminated several months thereafter, on October 17, 2008, "in response to [his] . . . request for reclassification" (Am. Cmplt., ¶ 16).

Since then, Plaintiff has attempting to bring a variety of claims against Coty, including an unemployment insurance claim in the NYSDoL (*id.*, ¶ 17) and a claim with the Internal Revenue Service seeking a determination of his federal employment tax status with respect to services performed from 2002 through 2008 (*id.*, ¶ 18).  Although Plaintiff also filed a claim with the U.S. Department of Labor ("USDoL") seeking benefits under Coty's benefit plans (Sheinfeld Decl., Exh. B), the USDoL declined to pursue this claim on Plaintiff's behalf (*id.*, Exh. C).

Plaintiff also instituted proceedings with the NYSDoL for violations of the New York Labor Law (*id.*, Exh. D), which resulted in two conferences before the NYSDoL, on July 9, 2009 and January 19, 2010 (*id.*, Exhs. E & F).  During the July 9, 2009 conference, Plaintiff submitted an affidavit, dated July 8, 2009, setting forth, *inter alia*, the overtime amounts to which he claimed entitlement, totaling $27,108.30 (*id.*, Exh. G).[3]  At the January 19, 2010 conference, Plaintiff, Coty and the NYSDoL entered into the Stipulation, which expressly covered the entire

---

[3]     Specifically, for each of the tax years in question, Plaintiff claimed the following amounts of overtime:  $850.00 (2002); $5,685.95 (2003); $2,437.38 (2004); $6,084.65 (2005); $5,305.80 (2006); $4,198.25 (2007, some $1,637.85 of which represents the amount of overtime claimed by Plaintiff during the period July 19, 2007 through December 31, 2007); and, $2,546.00 (2008) (Sheinfeld Decl., Exh. G).

period of Plaintiff's employment with Coty (*i.e.*, October 21, 2002 to October 17, 2008), and

provided as follows (Am. Cmplt., ¶ 19; Sheinfeld Decl., Exh. H):

> It is hereby agreed by and between the undersigned employer and the
> Department of Labor, Division of Labor Standards, that the above
> captioned Wage or Supplement Claim and/or Minimum Wage
> Underpayment for the period listed above is to be resolved in full for the
> sum indicated below (the "Payment"). These monies shall be paid to the
> Commissioner of Labor in the manner set forth below. The aforesaid
> amount is acknowledged to be for resolution purposes only and does
> constitute an admission of violation by the employer.*

| Agreed Amount of Wages To Be Paid | Interest | Penalty | Total | Due Date |
|---|---|---|---|---|
| $27,108.30 – overtime | zero (0) | zero (0) | 27,108.30 | 30 days |
| $32,891.70 - wage supplements | zero (0) | zero (0) | 32,891.70 | 30 days |

> *The Payment is in full and final satisfaction of all (i) claims of unpaid
> wages and wage supplements, including, without limitation, wages,
> overtime compensation, vacation, holiday, bereavement, sick pay or other
> leaves; and (ii) penalties, interest or damages of any kind whatsoever
> related to the claims herein. The Payment does not satisfy any claim for
> health and medical, dental or out-of-pocket health costs.

On February 12, 2010, Coty made a total payment of $60,000 to the NYSDoL, which, in

accordance with the Stipulation, collected the monies on Plaintiff's behalf (*id.*, Exh. I).

Plaintiff commenced the instant action on or about July 19, 2010, purporting to assert

claims against Coty under the FLSA, the New York Labor Law, ERISA Section 510 and RICO,

each based on his alleged misclassification as an independent contractor rather than an employee

of the Company (*see* Cmplt.). Following notice by Coty (in accordance with this Court's

Individual Rules) of its intention to move to dismiss the complaint pursuant to Fed. R. Civ.

P. 12(b), the Court granted Plaintiff leave to amend the complaint. Plaintiff filed his amended

complaint on November 3, 2010 (*see* Am. Cmplt.). Although Plaintiff deleted from the amended

complaint his claim under the New York Labor Law, as well as his retaliation claim under the

FLSA, each of Plaintiff's remaining claims remains subject to dismissal.

<u>Standard of Review</u>

In *Gibson v. Craigslist, Inc.*, No. 08 Civ. 7735 (RMB), 2009 WL 1704355, *2 (S.D.N.Y.

June 15, 2009), this Court articulated the legal standard applicable to a motion to dismiss the

complaint made pursuant to Fed. R. Civ. P. 12(b)(6):

> "When considering a motion to dismiss under Rule 12(b)(6), the Court
> 'must accept as true the factual allegations in the complaint, and draw all
> reasonable inferences in favor of the plaintiff.'" *Murawski v. Pataki*, 514
> F. Supp. 2d 577, 582 (S.D.N.Y. 2007).   At the same time, "a plaintiff's
> obligation to provide the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do." *Bell Atlantic Corp. v.
> Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation
> omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 2009 WL 1361536,
> *12 (May 18, 2009). The complaint must plead enough facts to state a
> claim for relief that is plausible on its face. *See Atlantic Recording Corp.
> v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 699 (S.D.N.Y.2009).

It is settled that, "[i]n assessing the legal sufficiency of a claim, the Court may consider

those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by

reference . . . and documents that are 'integral' to plaintiff's claims, even if not explicitly

incorporated by reference" (*Pisani v. Westchester County Health Care Corp.*, 424 F. Supp. 2d

710 (S.D.N.Y. 2006) (internal citation omitted)).

While, in assessing a motion to dismiss for lack of subject matter jurisdiction under Fed.

R. Civ. P. 12(b)(1), a court must accept as true all material allegations of fact in the complaint,

it should "refrain from "drawing from the pleadings inferences favorable to the party asserting

[jurisdiction]."  And, "[c]ourts evaluating Rule 12(b)(1) motions may resolve the disputed

jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits"

(*Raghavendra v. N.L.R.B.*, No. 08 Civ. 8120(PAC)(HBP), 2009 WL 5908013, *8 (S.D.N.Y.

Aug. 27, 2009) (internal citations omitted)).  Should a court "determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action" (Fed. R. Civ. P. 12(h)(3); *accord*

*Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)).

Argument

I.

PLAINTIFF'S ERISA CLAIMS SHOULD BE DISMISSED

Plaintiff claims that Coty violated Section 510 of ERISA by intentionally misclassifying

him as an independent contractor, and thus interfering with his alleged entitlement to benefits

under the Coty Inc. Flexible Benefit Plan (the "Plan") (*see* Am. Cmplt., ¶¶ 34-41).  Plaintiff's

claims under Section 510, however, are barred for two reasons:  first, they are untimely; and,

second, they fail to state a claim on the merits under Section 510 in any event.

A.      Plaintiff's ERISA Claims Are Untimely

The statute of limitations for asserting a claim under Section 510 of ERISA is two years

(*Sengillo v. Valeo Electrical Systems, Inc.*, 328 Fed. Appx. 39, 42 (2d Cir. 2009) (citing

*Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 333 (2d Cir. 1997)); *see also Downes*

*v. JP Morgan Chase & Co.*, No. 03 Civ. 8991 (GEL), 2004 WL 1277991, *5 (S.D.N.Y. June 8,

2004)).  Such claims accrue on "the date on which [Plaintiff] knew or should have known about

the alleged wrong, that is [his] misclassification with intent to deny [him] benefits" (*Downes*,

2004 WL 1277991 at *5).  Indeed, "all of the district courts that have considered claims made

by individuals who were classified or treated as independent contractors have held that the

statute of limitations begins to run when the beneficiary first learns that [he] is an independent

contractor and is therefore not entitled to benefits, regardless of whether [he] later files a formal

claim for benefits" (*Brennan v. Metropolitan Life Insurance Co.*, 275 F. Supp. 2d 406, 409

(S.D.N.Y. 2003)).

Here, Plaintiff alleges that his employment with Coty began "on or about October 21,

2002" (Am. Cmplt., ¶ 10), and that Coty "intentionally misclassified [him] as an independent

contractor, and not as an employee," at that time (*id.*, ¶ 12).  Accordingly, the statute of

limitations on his ERISA Section 510 claim accrued on October 21, 2002, and expired two

years thereafter, on October 21, 2004.  Because Plaintiff did not commence this action until

July 19, 2010, his Section 510 claims are untimely, and must be dismissed.[4]

> B.   Coty's Classification of Plaintiff as an Independent
>      Contractor Does Not Violate ERISA Section 510

Even assuming *arguendo* that Plaintiff's claims under Section 510 were timely, they must

still be dismissed for failure to state a claim.  As the court recognized in *Downes v. JP Morgan*

*Chase & Co.*, No. 03 Civ. 8991 (GEL), 2004 WL 1277991, *5 (S.D.N.Y. June 8, 2004)

(internal citations omitted):

> ERISA § 510 prohibits employers from disrupting vested or soon to be
> vested employee benefits for several purposes, including, for example, to
> harass or retaliate against an employee, or to prevent him or her from
> testifying in an ERISA proceeding.  But here, . . . "[plaintiff] does not
> allege any disruption of her employment that was designed to preclude her
> from obtaining benefits; instead, she contends that the act of hiring her as
> an [independent contractor], instead of as a regular employee, is itself a
> violation of § 510.  This position is untenable in law."

That holding applies with equal force in this case.  The amended complaint does not

allege a disruption of Plaintiff's employment designed to preclude him from obtaining benefits

under the Plan; rather it alleges that the act of classifying Plaintiff as an independent contractor

violated Section 510 (Am. Cmplt., ¶¶ 14, 38-40).  As courts within this Circuit do not recognize

a cause of action under ERISA Section 510 for misclassification as an independent contractor,

Plaintiff's claims under that section must be dismissed (*Downes*, 2004 WL 1277991, at *5;

*accord McLellan v. E.I. DuPont de Nemours & Company, Inc.*, No. 04-CV-314, 2006 WL

---

[4]   Even assuming that Plaintiff could credibly claim that he was unaware of his classification
from the outset of his Coty employment, he admits that the Company issued him an IRS
Form 1099 (applicable to independent contractors) rather than a Form W-2 (applicable to
employees) for each year of his employment with the Company (*see* Am. Cmplt., ¶ 21).
Accordingly, Plaintiff cannot reasonably deny that he was on notice of his classification
status from (at the very latest) January 2003, and his commencement of this lawsuit more
than seven years later remains untimely.

3751583, *22 (W.D.N.Y. Dec. 19, 2006) ("no cause of action lies under § 510 for an alleged

misclassification of one's employee status")).

II.

<u>PLAINTIFF'S FLSA CLAIMS SHOULD BE DISMISSED</u>

Plaintiff purports to state claims under the FLSA under two theories.  First, Plaintiff

asserts a claim for overtime wages he alleges are due him, upon which claim he asserts his

entitlement to liquidated damages, attorneys' fees and costs (Am. Cmplt., ¶¶ 29-31 & 33).

Second, Plaintiff claims that Coty failed to "properly disclose or apprise [him] of his rights under

the FLSA, and failed to properly post all legally required notices in accordance with the FLSA"

(*id.*, ¶ 32.)   Neither of Plaintiff's FLSA claims have merit.

A.       Plaintiff Waived His Rights under the
         <u>FLSA by Entering into the Stipulation</u>

As described above, Plaintiff entered into a Stipulation with the NYSDoL and Coty under

which Coty paid him $60,000, comprised of $27,108.30 for overtime, and $32,891.70 for wage

supplements, covering the entire period of Plaintiff's employment with the Company, *i.e.*,

October 21, 2002 to October 17, 2008 (Sheinfeld Decl., Exh. H).  The Stipulation expressly

provided that such payment was "in full and final satisfaction of all (i) claims of unpaid wages

and wage supplements, including, without limitation, wages, overtime compensation, vacation,

holiday, bereavement, sick pay or other leaves; and (ii) penalties, interest or damages of any kind

whatsoever related to the claims herein" (*id.*).

Generally, employees may waive FLSA claims for unpaid wages or overtime in two

circumstances:  (i) in a settlement supervised by the USDoL (29 U.S.C. § 216(c)), or (ii) via a

judicially-approved settlement (*Medley v. American Cancer Society*, No. 10 Civ. 3214 (BSJ),

2010 WL 3000028, *1 (S.D.N.Y. July 23, 2010)).  Here, the Stipulation was supervised by the

NYSDoL.  While Coty has not found any authority in this circuit addressing the validity of a

release of FLSA claims under such circumstances, in *Lignore v. Hospital of the University of Pennsylvania*, No. 04-5735, 2007 WL 1300733 (E.D. Pa. May 1, 2007), the district court held that a settlement supervised by the Pennsylvania Bureau of Labor Law Compliance was sufficient to bar a plaintiff from obtaining relief under the FLSA. The court reasoned (*id.* at *3):

> Ms. Lignore elected to pursue her wage claims by the process proscribed in the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S. § 209a(c), thus choosing to inform the Bureau of her claim, and causing it to initiate its administrative process of investigation and collection of unpaid wages. The Bureau "set up a hearing," . . . "collected" the release agreement, . . . and provided Ms. Lignore with the settlement check which she cashed . . . . The Bureau's supervision of the formation of the release between Ms. Lignore and HUP foreshortened Ms. Lignore's right to receive full statutory overtime wages [under the FLSA].

The facts of this case are similar to those in *Lignore*. Plaintiff availed himself of the procedures of the NYSDoL in obtaining relief for, *inter alia*, overtime compensation. Like the Pennsylvania state agency in *Lignore*, the NYSDoL convened two conferences, supervised the formation of the Stipulation, and obtained settlement funds from Coty, which it provided to Plaintiff. The Stipulation explicitly provided that it was in "full and final satisfaction of *all claims*" of unpaid wages and wage supplements, including for overtime compensation and related damages (Sheinfeld Decl., Exh. H) (emphasis supplied)). Inasmuch as Plaintiff's rights have been fully safeguarded through a settlement negotiated under the aegis of the NYSDoL, the Stipulation's terms should be enforced, and Plaintiff should not be permitted to recover additional monies under the FLSA.

B.    Plaintiff's FLSA Overtime Claim Is Moot

Even assuming *arguendo* that Plaintiff did not waive his rights under the FLSA by entering into the Stipulation, his FLSA claims should still be dismissed as moot.

Under terms of the Stipulation, Plaintiff expressly acknowledged that Coty's payment to Plaintiff was "for resolution purposes only and d[id] not constitute an admission of violation by the employer" (Sheinfeld Decl., Exh. H). In other words, Coty never conceded that Plaintiff was

entitled to any of these monies, but chose to pay them to resolve Plaintiff's claims against the Company.

Courts have held that where, as here, an employer pays an employee "funds to which the employee was not entitled," the employer is entitled to set off such amounts against a claim by the employee for overtime wages under the FLSA (*Martin v. PepsiAmericas, Inc.*, No 1:07-CV-91-SA-JAD, 2009 WL 4728694 (N.D. Miss. Dec. 3, 2009)).  Further, "[i]f the amount of a setoff exceeds the amount of overtime compensation owed, the employee may not recover for the unpaid overtime" (*id.*, citing *Reasoner v. All Seasons Pool Serv., Inc.*, No. 6:06-cv-1819-Orl-19DAB, 2007 WL 4326808, *9 (M.D. Fla. Dec. 7, 2007)).

In the affidavit he submitted during the NYSDoL hearing, Plaintiff asserted that he was entitled to recover the following amounts for overtime (Sheinfeld Decl., Exh. G):

| | |
|---|---|
| 2002: | $850.00 |
| 2003: | $5,685.95 |
| 2004: | $2,437.38 |
| 2005: | $6,084.65 |
| 2006: | $5,305.80 |
| 2007: | $4,198.25[5] |
| 2008: | $2,546.00 |

The statute of limitations for willful violations of the FLSA is three years (29 U.S.C. § 255(a)).  Assuming that Coty were found to have willfully violated the FLSA, the maximum period for which Plaintiff could recover back overtime pay would be through July 19, 2007 (*i.e.*, three years prior to commencement of this action), for a total of $4,183.85.[6]  If that amount were doubled for liquidated damages, Plaintiff could potentially recover up to a total of $8,367.70.  The amount delineated as "overtime" in the Stipulation, however, was $27,108.30 (Sheinfeld

---

[5]     The amount of such overtime specifically attributable to the period from July 19, 2007 through December 31, 2007 was $1,637.85 (*see* Sheinfeld Decl., Exh. G).

[6]     This amount is tallied by adding the overtime amount attributable to the period from July 19, 2007 through December 31, 2007 ($1,637.85, *see* footnote 5, *supra*) and the overtime amount for 2008 ($2,546) (*see* Sheinfeld Decl., Exh. G).

Decl., Exh. H).  Because Coty would be entitled to set off that amount against any recovery by

Plaintiff on his FLSA claims, and because that set-off amount exceeds any potential recovery by

Plaintiff on such claims, Plaintiff lacks a "legally cognizable interest in the outcome of this

litigation," his FLSA claims are moot, this Court is deprived of jurisdiction over such claims,

and they are subject to dismissal (*see Martin*, 2009 WL 4728694, *6 (dismissing FLSA claim as

moot where plaintiff's maximum recovery was $19,320, but employer was entitled to a set-off of

$22,997.23 for monies paid pursuant to a release)).[7]

C.     Plaintiff Cannot Recover for Coty's Alleged
       Failure to Apprise Him of His Rights under the FLSA

Plaintiff has alleged, without elaboration, that "Coty failed to properly disclose or apprise

Plaintiff of his rights under the FLSA, and failed to properly post all legally required notices in

accordance with the FLSA" (Am. Cmplt., ¶ 32).  Assuming, solely for purposes of this motion,

that Coty did not properly post the required notice, Plaintiff would not be entitled to any remedy

for such a failure, as there is no FLSA statutory or regulatory penalty resulting from a failure to

post the required notice.  Accordingly, Plaintiff's claim based on Coty's alleged violation of

posting obligations cannot sustain an independent claim for relief under the FLSA.

III.

PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED

Plaintiff's claim under RICO is brought under 18 U.S.C. Section 1964, and arises from

an alleged violation of 18 U.S.C. Section 1962(a), which provides, in pertinent part:

> (a) It shall be unlawful for any person who has received any income
> derived, directly or indirectly, from a pattern of racketeering activity or
> through collection of an unlawful debt in which such person has
> participated as a principal within the meaning of section 2, title 18, United
> States Code [18 U.S.C. § 2], to use or invest, directly or indirectly, any

---

[7]     Nor does Plaintiff's demand for attorneys' fees factor into the analysis, as "an interest in
attorney's fees is . . . insufficient to create an Article III case or controversy where none
exists on the merits of the underlying claim" (*id.* at *6 n.19, citing *Steel Co. v. Citizens for a
Better Environment*, 523 U.S. 83, 107 (1998)).

part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

To state a civil claim under RICO, a plaintiff must allege that the defendant has violated Section 1962, and allege the existence of seven constituent elements: (i) that defendant, (ii) through the commission of two or more "predicate" acts (iii) constituting a "pattern" (iv) of "racketeering activity," (v) directly or indirectly invests in, maintains an interest in or participates in (vi) an "enterprise," (vii) the activities of which affect interstate or foreign commerce (*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).  "Racketeering activity" is defined as any act, including bribery and extortion, chargeable under State law and punishable by imprisonment for more than one year; any act indictable under numerous specific federal criminal provisions, including mail and wire fraud; or, any offense involving bankruptcy, securities fraud or drug-related activities that is punishable under federal law (18 U.S.C. § 1961).

Here, Plaintiff alleges that, by mailing IRS Form 1099s to him based upon its alleged intentional misclassification of Plaintiff as an independent contractor, Coty committed mail fraud.  As detailed below, Plaintiff's RICO allegations are deficient, for a variety of reasons.

A.      Plaintiff Fails to Plead Mail Fraud with Particularity

In *McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992), the Second Circuit set forth the requirements to prove a violation of the mail fraud statute:  "[P]laintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme . . . .  While there is no requirement that the defendant personally mail a letter, the plaintiff must show 1) that the defendant 'caused' the mailing . . . and 2) that the mailing was for the purpose of executing the scheme or . . . incidental to an essential part of the scheme" (*id.* at 190-91).

Furthermore, in the civil RICO context, the allegations must be pled with particularity in accordance with Fed. R. Civ. P. 9(b), *i.e.*, the complaint must "specify the statements it claims

were false or misleading, give particulars as to the respect in which the plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements" (*Eldred v. Comforce Corp.*, No. 3:08-CV-1171 (LEK/DEP), 2010 WL 812698, *10 (N.D.N.Y. Mar. 2, 2010), citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)).   The complaint must also "identify the purpose of the mailing within the defendant's fraudulent scheme, . . . [and] allege facts that give rise to a strong inference of fraudulent intent" (*id.*).

Here, the amended complaint fails to identify the "statements" that were made, why they were false or misleading, when and where the statements were allegedly made, and who was responsible for them.   Courts have held that such failures are fatal to RICO claims based upon mail fraud (*Eldred*, 2010 WL 812698 at *11 (dismissing RICO claim based upon mail fraud where plaintiffs failed to "isolate any particular act or representation made by specific . . . personnel to any individual class member on any particular date"); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 137 (E.D.N.Y. 2010) (dismissing RICO claim based on mail and wire fraud where the "complaint [did] not allege who made the alleged misstatements, or when or where the statements were made"); *Leung v. Law*, 387 F. Supp. 2d 105, 114 (E.D.N.Y. 2005) (dismissing RICO claim where complaint was based on blanket accusations that were "clearly insufficient to meet the particularity requirement"); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) (dismissing civil RICO claim where the complaint "fail[ed] to specify what each defendant said, alleged only a "vague window of time" during which the statements were made, and contained only "vague and conclusory" allegations as to why the statements were fraudulent)).

At most, Plaintiff alleges that Coty provided him with a "1099 tax form" rather than a W-2 form (Am. Cmplt., ¶ 21), which he characterizes (in conclusory fashion) as the "wrong tax form" (*id.*, ¶ 22) and "fraudulent" (*id.*, ¶ 45).   Plaintiff does not, however, set forth the content of

13

these forms, nor does he identify how or why they were false and misleading (*Mathon v. Feldstein*, 303 F. Supp. 2d 317, 323 (E.D.N.Y. 2004) (holding that plaintiffs were required to "set forth the content of the items mailed and specify how each of the items was false and misleading")).  Nor does the amended complaint "indicate precisely what statement or omissions were made in what documents and the manner in which they misled" Plaintiff (*Greenes v. Empire Blue Cross & Blue Shield*, No. 92 Civ. 8599, 1996 WL 640873, *5 (S.D.N.Y. Nov. 4, 1996)).  Mere "[c]onclusory allegations that defendants' conduct was fraudulent or deceptive are not enough" (*Conte*, 703 F. Supp. 2d at 137; *see also Leung*, 387 F. Supp. 2d at 114 (holding Rule 9(b) not satisfied where plaintiffs "name[d] whole documents, each of which encompasses numerous discreet statements, and allege[d], in vague and sweeping language, that each of these documents contained one or more false statements")).

Similarly, the amended complaint does not allege when or where an IRS Form 1099 was mailed, only that Coty "relatedly and repeatedly furnished Plaintiff with a 1099 tax form during each year of Plaintiff's employment with Coty, and not a W-2 form" (Am. Cmplt., ¶ 21).  Such a vague and general allegation falls short of the particularity required by Fed. R. Civ. P. 9(b) (*Alnwick*, 281 F. Supp. 2d at 640 (allegation that fraudulent statements were made "in the Fall and Winter of 1996 and the first months of 1997" was "insufficient to satisfy the pleading standards of Rule 9(b)"); *Skylon Corp. v. Guilford Mills, Inc.*, No. 93 Civ. 5581 (LAP), 1997 WL 88894, *2 (S.D.N.Y. Mar. 3, 1997) (alleging a "four-month window during which all of the misrepresentations occurred . . . does not satisfy the pleading standard of Rule 9(b)")).

In addition to requiring that a plaintiff plead the circumstances of fraud with particularity, Fed. R. Civ. P. 9(b) also requires that a plaintiff plead each of the elements of the mail fraud offense with particularity (*Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 170 F.R.D. 361, 382 (S.D.N.Y. 1997)).  An essential element is that the defendant used the mails to defraud "in furtherance" of the alleged racketeering scheme (*S.Q.K.F.C., Inc. v. Bell Atlantic TriCon*

*Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)).   Courts have made clear that "not every use of the mails . . . in furtherance of an unlawful scheme to deprive another of property" constitutes mail fraud.  "Rather, the scheme must be intended to *deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct" (*McGee v. State Farm Mut. Auto Ins. Co.*, No. 08-CV-392 (FB)(CLP), 2009 WL 2132439, *5 (E.D.N.Y.  July 10, 2009) (emphasis in original); *see also McLaughlin*, 962 F.2d at 192 ("[t]he mail fraud statute requires some element of deception")).

In the instant case, Plaintiff has failed to allege any facts that would render his mail fraud claim "plausible on its face," as required to survive a motion to dismiss (*Twombly*, 550 U.S. at 556).  The amended complaint alleges only that Coty "intentionally engaged in a pattern of racketeering activity by repeatedly and continuously committing mail fraud in violation of 18 U.S.C. § 1341, specifically by intentionally placing Plaintiff's fraudulent tax forms in a United States mail box for delivery by the United States Postal Service, with the intent to defraud Plaintiff, and with the intent to obtain and/or retain additional monies by means of false or fraudulent pretenses" (Am. Cmplt., ¶ 45).  The amended complaint provides no explanation how mailing the IRS Form 1099s enabled Coty to "defraud" him.  In fact, if anything, the delivery of the Form 1099s "would alert [Plaintiff] to the fraudulent scheme, not conceal it" (*Cavallaro v. UMass Memorial Health Care, Inc.*, No. 09-40152-FDS, 2010 WL 3609535, *3-4 (D. Mass. July 2, 2010) (dismissing RICO claims, noting that employer's mailing of pay checks that misstated the number of hours employee worked would only serve to put that employee on notice of underpayment)).

Another element of mail fraud absent from this case is specific intent to defraud (*State Farm Mutual  Insurance Co. v. Grafman*, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2009)).  Acts performed inadvertently, mistakenly or in good faith cannot satisfy that element (*O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990)).  Rather, under Fed. R. Civ.

P. 9(b), a plaintiff is required to "allege facts which give rise to a strong inference of fraudulent intent," specifically, facts (i) demonstrating that defendant had both the motive and opportunity to commit the fraud, or (ii) suggesting strong circumstantial evidence of conscious behavior or recklessness (*Alnwick*, 281 F. Supp. 2d at 641).

Here, the amended complaint contains no plausible allegations of fraudulent intent. Indeed, as noted above, the circumstances of the alleged fraud do not make any sense. Mailing Form 1099s to Plaintiff would only serve to put him on notice of the alleged violation.

Finally, the amended complaint alleges no facts that would suggest strong circumstantial evidence of fraudulent intent. To the contrary, to the extent that Plaintiff pleads intent at all, the allegations are entirely conclusory. Under Fed. R. Civ. P. 9(b), it is not enough for a complaint "to couple a factual statement with a conclusory allegation of fraudulent intent" (*Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1129-30 (2d Cir. 1994) (affirming dismissal of fraud claim)). Because that is, at most, all that Plaintiff has plead in this case, his RICO claim must be dismissed.

      B.      <u>Plaintiff Lacks Standing under RICO</u>

Plaintiff's RICO claim must be dismissed because he does not – and cannot – allege that he suffered an injury proximately caused by Coty's purported "racketeering acts."

Standing to sue under civil RICO is limited to "plaintiffs whose injuries were caused proximately by the RICO predicate acts" (*Leung*, 387 F. Supp. at 113; *see also Nichols v. Mahoney*, 608 F. Supp. 2d 526, 539-40 (S.D.N.Y. 2009)). As the Supreme Court recently reaffirmed (*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (internal quotations and citations omitted)):

> [T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a "but for" cause of his injury, but was the proximate cause as well. Proximate cause for RICO purposes . . . requires some direct relation between the injury asserted and the injurious

conduct alleged.  A link that is too remote, purely contingent, or indirect is insufficient.

Here, the only RICO predicate act alleged in the amended complaint is mail fraud, specifically, Coty's alleged mailing of IRS Form 1099s to Plaintiff (Am. Cmplt., ¶¶ 21, 22 & 45).  But Coty's mailing of the purportedly incorrect tax forms is not the proximate cause of Plaintiff's alleged injury; rather, the cause is Coty's alleged misclassification of Plaintiff as an employee rather than an independent contractor (*see Leung*, 387 F. Supp. 2d at 122 ("[a]n act which proximately caused an injury is analytically distinct from one which furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act"), quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995)).  And, as a matter of settled law, that alleged violation of the FLSA cannot serve as a predicate act under RICO (*Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 383 (2d Cir. 2001) ("paying workers less than the prevailing wage and failing to withhold payroll taxes are not RICO predicate acts"); *Barrus v. Dick's Sporting Goods, Inc.*, No. 05-CV-6253 (CJS), 2010 WL 3075730, *16 (W.D.N.Y. Aug. 5, 2010) (dismissing RICO claim where "[p]laintiffs have not alleged that the harm they suffered was as a consequence of the predicate acts listed in the RICO statute," but rather "as a result of alleged violations of FLSA"); *Vandermark v. City of New York*, 615 F. Supp. 2d 196, 210-11 (S.D.N.Y. 2009) ("[a]lleged civil violations of the FLSA do not amount to racketeering")).

It is black-letter law that a person may not bring a civil RICO suit "for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the [RICO] statute" (*Beck v. Prupis*, 529 U.S. 494, 507 (2000)).  Because the amended complaint cannot allege that Plaintiff's injury was proximately caused by the predicate act of mail fraud, Plaintiff is without standing to bring a claim under RICO.

C.      Plaintiff's RICO Claims Are Preempted

Civil RICO claims are precluded when they are based on alleged violations of other federal statutes that provide their own comprehensive remedies. "[W]here a statute provides an exclusive remedy, concurrent RICO claims based on the same conduct should be dismissed" (*Eldred*, 2010 WL 812698 at *10, citing *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634 (2d Cir. 1989)).

Courts have held that the FLSA is such a statute.  In *Eldred*, for example, plaintiffs brought a RICO claim based on the same conduct underpinning their FLSA claims.  Recognizing that the FLSA "provides a sufficiently punitive scheme," the court dismissed plaintiffs' RICO claims, reasoning that "where a plaintiff's 'RICO claims [are] brought alongside other statutes which, like the FLSA, provide comprehensive remedies . . . [p]laintiffs' RICO claims should be precluded'" (2010 WL 812698 at *10, quoting *Choimbol v. Fairfield Resorts, Inc.*, No. 2:05-CV-463, 2006 WL 2631791, *7 (E.D. Va. Sept. 11, 2006)).  Insofar as Plaintiff's RICO claim in the instant action is grounded on the same facts basis as his claims for violation of the FLSA, the FLSA pre-empts the RICO claim.

Moreover, to the extent the amended complaint avers that Plaintiff was injured because he was made "responsible for paying certain taxes than an independent contractor, and not an employee, [and] overpaid his social security contributions by approximately $24,000 during his tenure of employment at Coty" (Am. Cmplt., ¶¶ 21, 47), these allegations do not avail Plaintiff, as there are exclusive administrative schemes for remedying violations of the Internal Revenue Code and the Social Security Act, and no private right of action available thereunder (*see, e.g., White v. White Rose Food*, 62 F. Supp. 2d 878, 886 (E.D.N.Y. 1999) (no private right of action under FUTA, FICA or state unemployment tax statutes); *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 65-67 (3d Cir. 2008) (IRS regulations preempted common law claims for misclassification, FICA did not provide for a private right of action, and state law claims that "at root" asserted FICA violations were barred)).  Accordingly, RICO claims "based on allegations of mail and wire fraud in

furtherance of defendants' conduct in allegedly misclassifying plaintiffs [that] rest upon a finding that defendants' conduct was illegal under the tax reporting laws" are also preempted (*Gifford v. Meda*, No. 09-cv-13486, 2010 WL 1875096, *16 (E.D. Mich. May 10, 2010) (dismissing RICO claim, holding that "the comprehensive administrative scheme embodied in the [Internal Revenue Code] and the [Social Security Act] leaves no room for a private action of FICA masquerading as a RICO claim")).

      D.    <u>Plaintiff's RICO Claim Is Untimely</u>

Finally, Plaintiff's RICO claim should also be dismissed as untimely.  "The statute of limitations for a civil RICO claim is four years," and "[t]he statute begins to runs when the plaintiff discovers – or should reasonably have discovered – the alleged injury" (*McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008) (internal citations omitted)).  The Second Circuit applies a two step analysis with respect to determining the timeliness of a RICO claim.  "The first step . . . is to determine when [plaintiffs] sustained the alleged injury for which they seek redress.  We then determine when [plaintiffs] discovered or should have discovered [their] injury" (*In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 59 (2d Cir. 1998)).

Here, Plaintiff alleges that his employment with Coty commenced in October 2002 (Am. Cmplt., ¶ 10) and that he was provided an IRS Form 1099 "during each year of his employment with Coty" (*id.*, ¶ 21).  Although Plaintiff does not specifically allege when he received his first IRS Form 1099 from Coty, it would have been issued him no later than January 31, 2003, as required by applicable IRS regulations (*see* 26 U.S.C. § 6041A).  Accordingly, even assuming *arguendo* that Plaintiff suffered an injury cognizable under RICO as a result of his receipt of a Form 1099, such injury would have been discovered – or reasonably should have been discovered – by Plaintiff when he received his first IRS Form 1099 from Coty in January 2003.  As the four-year state of limitations applicable to RICO claims would have elapsed by 2007 at the latest, Plaintiff's RICO claims are time-barred.

<u>Conclusion</u>

For all of the reasons stated above, Coty respectfully requests an Order dismissing the amended complaint in its entirety, with prejudice, and granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
          November 26, 2010

                                   Respectfully submitted,

                                   WINSTON & STRAWN LLP


                                   By: <u>/s/ Stephen L. Sheinfeld          </u>
                                         Stephen L. Sheinfeld
                                         William M. Sunkel
                                   200 Park Avenue
                                   New York, New York 10166
                                   (212) 294-6700
                                   (212) 294-4700 (facsimile)
                                   ssheinfeld@winston.com

                                   Attorneys for Defendant



Of Counsel:

        Jason S. Aschenbrand