## PRELIMINARY STATEMENT

Plaintiff, Ohan Karagozian, is a former employee of Defendant, COTY US LLC a/k/a COTY Inc. (hereinafter "COTY" or "Defendant").  Plaintiff commenced this action by filing a Complaint on July 19, 2010, followed by an Amended Complaint on November 3, 2010.  The Amended Complaint asserts claims against COTY pursuant to the Fair Labor Standards Act 29 U.S.C. §§201 *et seq.* ("FLSA"); the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1140 ("ERISA § 510"); and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a) ("RICO").

Specifically, Count I of the Amended Complaint alleges that COTY violated the FLSA by: (1) willfully failing to compensate Plaintiff for his overtime hours worked <u>in any</u> amount at the statutorily prescribed rate; and (2) willfully failing to pay Plaintiff's vacation, holiday, sick pay, and bonuses from October 2002 until his illegal discharge on October 17, 2008.  As a result, Plaintiff seeks to recover these unpaid wages, as well as corresponding liquidated damages due to COTY's willful failure to pay such wages.  As direct evidence of the willful nature of COTY's conduct, Count I includes the allegation that COTY failed to apprise Plaintiff of his rights under the FLSA.  Count II of the Amended Complaint alleges that COTY violated ERISA § 510 by: (1) intentionally and willfully misclassifying Plaintiff as an independent contractor throughout his tenure of employment at COTY for the purpose of interfering with Plaintiff's attainment of his pension and health care benefits; and (2) terminating Plaintiff's employment for that same purpose.  Count III of the Amended Complaint alleges that COTY is liable to Plaintiff under RICO 18 U.S.C. §1964(c) due to its intentional commission of mail fraud.

Defendant now moves to dismiss the Amended Complaint, in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").  Specifically, Defendant argues

that Plaintiff's claims under the FLSA are legally deficient for three (3) reasons: (1) Plaintiff's claim for unpaid overtime and wages under the FLSA are barred by the terms of a stipulation entered into between the parties; (2) even if Plaintiff's unpaid overtime and wage claims under the FLSA are not barred by the terms of the parties' stipulation, those claims are nonetheless moot because the amount paid to Plaintiff pursuant to that stipulation exceeds the amount of damages otherwise recoverable by Plaintiff under the FLSA, and COTY is entitled to an offset for those amounts previously paid; and (3) the FLSA does not provide a remedy for an employer's failure to notify its employees of their rights.

Defendant further argues that Plaintiff's ERISA claim is deficient for the following two (2) reasons: (1) it was not timely filed within two (2) years of that claim's accrual; and (2) one court within the Second Circuit has once held that ERISA § 510 does not provide a remedy for an employer's intentional misclassification of its employees as independent contractors for the explicit purpose of interfering with that employee's attainment of pension benefits to which he/she would have otherwise been entitled.

Lastly, Defendant argues that Plaintiff's RICO claim is legally deficient for the following four (4) reasons: (1) Plaintiff failed to plead mail fraud with requisite particularity; (2) Plaintiff lacks standing because he has not alleged that he was injured by the Defendant's "predicate" racketeering act; (3) a RICO claim premised on the facts alleged here is preempted by the FLSA and other federal laws; and (4) such claim is barred by the applicable statute of limitations.

Each of Defendant's arguments is severely flawed.  First, as explained fully below, Plaintiff never waived his claims for damages under the FLSA, as the prior stipulation entered into between the parties explicitly and unequivocally applied only to Plaintiff's claims arising under New York State Law.  Next, even if the parties' stipulation were somehow deemed to be a

waiver by Plaintiff of his unpaid overtime and wage claims under the FLSA, such waiver would be invalid as a matter of law, as a claim for damages under the FLSA cannot legally be waived without supervision of the United States Secretary of Labor or without judicial approval of the stipulation, neither of which occurred here.  Moreover, there is simply no allegation in either the Amended Complaint or accompanying exhibits that supports COTY's claimed entitlement to an offset, as a matter of law, for the amount previously paid to Plaintiff under the parties' prior stipulation.  In fact, the allegations of the Amended Complaint and attached documentary evidence demonstrate just the opposite, which is that COTY is not entitled to such an offset.

Next, Plaintiff's ERISA § 510 claim has been sufficiently pled, as there is no allegation in the Amended Complaint that such claim has not been filed within two years of its accrual date. Additionally, a claim that an employer intentionally misclassified an employee as an independent contractor for the express reason of interfering with the employee's attainment of pension benefits, and terminated that employee for that same reason, is a recognized cause of action pursuant to ERISA § 510.

Finally, Plaintiff's RICO claim has also been sufficiently pled.  First, the Amended Complaint alleges all of the required elements of mail fraud with sufficient particularity. Second, the Amended Complaint adequately alleges that Plaintiff maintains standing as a RICO plaintiff, as Count III expressly states that but-for and as a proximate cause of COTY's conduct, Plaintiff would not have suffered the same financial injuries that he suffered due to COTY's conduct.  Third, RICO claims predicated on mail fraud are not preempted by other federal laws. Lastly, Plaintiff's RICO claim has been timely filed within four years of its accrual date.

Accordingly, Plaintiff has adequately pled each cause of action in accordance with prevailing law, and this Court should deny Defendant's motion in its entirety.

## **FACTUAL ALLEGATIONS**

Plaintiff commenced his employment at COTY on or about October 21, 2002, in the position of "help desk support technician." Am. Complaint ¶ 10.  COTY manufactures and distributes various brand-named colognes and other beauty products throughout the United States and to countries around the world. Am. Complaint ¶¶ 8-9.  Throughout Plaintiff's employment, COTY exercised supervision, direction, and control over Plaintiff's services by such means as those described in paragraph 11 of the Amended Complaint.

Notwithstanding the fact that Plaintiff was quite clearly a COTY employee, COTY intentionally and willfully misclassified Plaintiff as an independent contractor rather than as an employee throughout the entirety of Plaintiff's employment with COTY, and then refused to pay Plaintiff overtime wages, vacation, holiday and sick pay that COTY only offered to its employees. Am. Complaint ¶¶ 12-13.

COTY's willful decision to misclassify Plaintiff as an independent contractor was also undertaken as a means for COTY to intentionally interfere with Plaintiff's attainment of pension and medical benefits under the terms of COTY's pension plan. Am. Complaint ¶ 14.  COTY is the "plan sponsor" of a pension plan within the meaning of ERISA, and only COTY employees, and not independent contractors, are eligible to obtain benefits under the terms of that plan. Am. Complaint ¶ 5.

On or about July 30, 2008, Plaintiff formally submitted a reasonable, good faith written request to COTY that he be reclassified as an employee. Am. Complaint ¶ 15.  On or about October 17, 2008, only six weeks after Plaintiff opposed COTY's intentional misclassification of him, as further evidence of the willful nature of COTY's conduct, and as a further means to

interfere with Plaintiff's attainment of pension benefits, COTY retaliated by illegally terminating Plaintiff's employment. *See* Am. Complaint ¶¶ 16, 39.

On or about December 3, 2008, the New York State Department of Labor determined that Plaintiff had been a nonexempt employee and not an independent contractor throughout his entire tenure of employment at COTY. Am. Complaint ¶ 17.  On or about March 26, 2009, the Internal Revenue Service ("IRS") determined that Plaintiff had been a nonexempt employee and not an independent contractor throughout his entire tenure of employment at COTY. Am. Complaint ¶ 18; *see also* Exhibits A and B, annexed to the Declaration of Alexander T. Coleman ("Coleman Declaration").

COTY further injured Plaintiff by engaging in a pattern of racketeering activity through its annual commission of mail fraud. Am. Complaint ¶ 21.  Specifically, COTY, each year, on or before the deadline established by federal law, committed mail fraud by intentionally mailing to Plaintiff, via the United States Postal Service (or its competitor), a 1099 tax form rather than a W-2. Am. Complaint ¶ 22.  As is common knowledge, a 1099 form directly informed Plaintiff of the nature and extent of the tax burdens for which he would be responsible each year, and, correspondingly, for which COTY would not be responsible each year. *Id.*  Such tax forms were also prepared outside of the New York metropolitan area, and were only deliverable to COTY employees residing in the New York metropolitan area, such as Plaintiff, via use of the United States Postal Service (or one of its competitors). *Id.*  As a direct and proximate result of COTY's fraudulent use of the mail, Plaintiff overpaid his social security contributions by approximately $24,000. Am. Complaint ¶ 21.  But for COTY's fraudulent use of the mail in such a manner, Plaintiff would not have known that he was responsible for paying such taxes, and thus would not have suffered such financially injuries. *Id*.  Concomitantly, but for COTY's fraudulent use of

the mail, had Plaintiff not paid those taxes, COTY would have been ultimately responsible for paying them, which means that COTY incurred a direct financial benefit due to its commission of mail fraud. *Id.* Finally, COTY used its financial windfall to either acquire an interest in, or to establish or operate part or all of its business. Am. Complaint ¶ 23.

In or around January 2009, Plaintiff and COTY subsequently agreed to *partially* resolve Plaintiff's claim for *solely* unpaid wages arising *solely* under New York State law. Am. Complaint ¶ 19. As is abundantly apparent from the parties' Authorization for Wage Resolution ("release"), annexed to the Coleman Declaration as Exhibit "C," any monies paid by COTY to Plaintiff were in satisfaction for only Plaintiff's claims arising under New York State law. Explicitly precluded from that stipulation were claims arising under any Federal law, as well as any claims pertaining to Plaintiff's claim to health care and pension benefits.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the Court may dismiss an Amended Complaint for "fail[ure] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations set out in [P]laintiff's Complaint, draw inferences from those allegations in the light most favorable to [P]laintiff, and construe the Complaint liberally." The Court should dismiss a Complaint under Rule 12(b)(6) only when it "appears beyond doubt that the [P]laintiff can prove no set of facts in support of [his/her] claim[s] which would entitle [him/her] to relief."

Recently, the United States Supreme Court has heightened the notice pleading requirements of Rule 12(b)(6), stating that a complaint must now give the Defendant fair notice of the claim and the grounds upon which it rests. Moreover, meeting that new standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true." *Id.*   While it is apparent that *Twombly* requires an amplification of the pleadings, the plain language of Rule 12 has remained the same.

"A claim has facial plausibility when the [P]laintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *South Cherry St., LLC v. Hennessee Grp., LLC,* 573 F.3d 98, 110 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). The Court's "review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint." *Chapman v. N.Y. State Div. for Youth,* 546 F.3d 230, 234 (2d Cir.2008).

## ARGUMENT

## I.     FLSA CLAIMS

Count I of The Amended Complaint alleges that COTY willfully failed to compensate Plaintiff for hours worked per workweek in excess of 40 hours, and that COTY also failed to compensate Plaintiff for other wages that Plaintiff earned to which he is otherwise entitled.  All of those unpaid wages are due to Plaintiff under the FLSA, since Plaintiff, as determined by both the IRS and New York State Department of Labor, was at all relevant times an employee and not an independent contractor of COTY.   Count I contains further allegations that due to the willfulness of COTY's conduct, Plaintiff is entitled to recover liquidated damages under the FLSA.   Moreover, to highlight COTY's willful conduct, Count I contains an allegation that COTY failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

As explained above, COTY now contends that Plaintiff has waived his FLSA claims to overtime and other unpaid wages by virtue of a stipulation entered into between the parties.

Moreover, Defendant contends that even if that stipulation does not act as a bar to Plaintiff's FLSA claims, COTY is still entitled to offset any monies that it might owe Plaintiff for its FLSA violations against any amount previously paid to Plaintiff pursuant to the parties' stipulation. Lastly, COTY contends that Plaintiff cannot recover for COTY's failure to apprise Plaintiff of his FLSA rights. Def.'s Mem. Supp. pp. 8-11.  All four of COTY's arguments fail.

### A.  PLAINTIFF'S FLSA CLAIMS FOR UNPAID OVERTIME AND OTHER WAGES ARE NOT BARRED BY THE PARTIES' STIPULATION.

1. The parties' stipulation applies only to Plaintiff's claims for unpaid overtime and wages arising under federal law.

As explained above, COTY argues that the stipulation entered into between the parties serves as a bar to Plaintiff's claims for unpaid overtime and wages under the FLSA.  However, as is made perfectly clear from the allegations contained in paragraph 19 of the Amended Complaint, as well as the parties' release annexed to the Coleman Declaration as Exhibit C, the parties' stipulation served <u>only</u> as a bar to Plaintiff's claims for <u>only</u> unpaid wages arising <u>only</u> under New York State law.  Explicitly exempted from the parties' stipulation is any claim that does not pertain to wages, as well as any claim that arises under federal law.  Also carved out from the parties' stipulation is any claim pertaining to pension benefits.  Thus, in light of the Amended Complaint's express allegations, as well as the annexed documentary evidence, there can simply be no argument that the parties' stipulation bars Plaintiff's FLSA unpaid wage claims as a matter of law.  Similarly, if Plaintiff's FLSA unpaid wage claims are not barred as a matter of law, then Plaintiff may also prove his entitlement to liquidated damages under the FLSA due to the willful nature of COTY's actions.

      2.  Even if the parties' stipulation somehow did encompass Plaintiff's FLSA claims, the waiver itself is invalid as a matter of law.

Even had Plaintiff's federal claims not been explicitly saved by the language of the parties' stipulation, any waiver by Plaintiff of his FLSA claims in such a manner would be invalid as a matter of law.  The FLSA states that an employer who violates the Act's minimum wage or overtime provisions "shall be liable to the ... employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b) (1994). The FLSA traditionally places "strict limits on an employee's ability to waive claims for unpaid wages or overtime under 29 U.S.C. § 216 for fear that employers would coerce employees into settlement and waiver." *Manning v. New York Univ.,* 98 CIV. 3300(NRB), 2001 WL 963982 *11 (S.D.N.Y. Aug. 22, 2001) aff'd, 299 F.3d 156 (2d Cir. 2002) (citing *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728 (1981)).  Accordingly, employees cannot waive their FLSA claims unless one of the following exceptions apply: (1) the settlement is supervised by the United States Department of Labor; or (2) the settlement has been judicially-approved. *Id.*

Thus, even had Plaintiff not explicitly saved his federal claims from the parties' stipulation, the settlement would still be invalid as a matter of law, as the parties' stipulation was neither supervised by the United States Department of Labor, nor was it judicially approved. While the parties' stipulation was in fact supervised by the New York State Department of Labor (and as such, acts as a waiver of Plaintiff's unpaid wage claims under the New York State Labor Law), as COTY expressly admits in its motion papers, no court in the Second Circuit has ever held that a stipulation approved by the New York State Department of Labor can act as a waiver to an individual's unpaid wage claims under the FLSA. Def.'s. Mem. Supp. p. 8-9.  Thus, even if the terms of the parties' waiver somehow included a waiver of Plaintiff's FLSA claims, which it does not, such waiver would be legally invalid.

9

For either of the aforementioned reasons, Plaintiff's FLSA claims for unpaid overtime and wages and corresponding liquidated damages are not barred by the parties' stipulation.

**B.  COTY IS NOT ENTITLED TO SETOFF ANY AMOUNTS PREVIOUSLY PAID TO PLAINTIFF PURSUANT TO THE PARTIES' STATE LAW STIPULATION AGAINST ANY MONEY OWED TO PLAINTIFF UNDER THE FLSA.**

Defendant next argues that Plaintiff's overtime claim is moot because the amount of money previously paid to Plaintiff under the parties' stipulation would exceed any amount ultimately awarded to Plaintiff for COTY's FLSA violations, including claims for unpaid overtime, other wages, and liquidated damages.  As such, Defendant argues that it is entitled to offset any amount owed from the amount already paid, which would then serve to moot the entirety of Count I concerning unpaid wages and liquidated damages. Def.'s  Mem. Supp. p. 8.

Defendant hinges its "offset" theory on the argument that in agreeing to pay Plaintiff pursuant to the parties' stipulation, COTY never "conceded" that Plaintiff was "entitled" to any of the monies paid by COTY. Def.'s Mem. Supp. p. 9.  Instead, COTY argues that its payment to Plaintiff pursuant to the stipulation was merely "for resolution purposes only and d[id] not constitute an admission of violation by the employer." *Id*.  Defendant then torturously relies on two district court cases from Mississippi and Florida, which it contends state that when an employer pays an employee funds to which he/she "was not otherwise entitled," the employer may offset such amounts paid against amounts owed under the FLSA. *Id*. at 10.  COTY concludes that because the express language of the stipulation stated that it was for "resolution purposes only," and thus did not constitute an admission, Plaintiff was not "otherwise entitled" to such funds, and COTY is thus entitled to the previously described offset. *Id.*

Other than the fact that Defendant has not bothered to cite a single case from a court within the Second Circuit supporting its legal theory (because none exists), there is one

incredibly fatal flaw to Defendant's argument.  Specifically, while the stipulation might have stated that it was for resolution purposes only, the entire gravamen of Count I of the Amended Complaint is that Plaintiff <u>was in fact</u> otherwise entitled to that money.  The allegations of the Amended Complaint expressly aver that Plaintiff was at all relevant times an employee and not an independent contractor, which means that he was in fact otherwise entitled to the funds already paid to him by COTY.  Moreover, as specifically alleged in paragraphs 17 and 18 of the Amended Complaint and demonstrated by respective Exhibits A and B annexed to the Coleman Declaration, both the Internal Revenue Service and New York State Department of Labor <u>have already determined</u> that Plaintiff was in fact entitled to the money paid to him by COTY pursuant to the parties' stipulation release.  Thus, it cannot seriously be argued that at this 12(b)(6) stage of the litigation, it is appropriate for the Court to determine, as a matter of law, that Plaintiff was not otherwise entitled to the money paid to him for unpaid overtime and wages, under New York State law, pursuant to the parties' stipulation.  Similarly, COTY cannot argue that it is entitled to an offset of such funds, when the Amended Complaint's allegations and attached documentary evidence demonstrate that Plaintiff was in fact "otherwise entitled" to such funds.

Additionally, even if Defendant's argument could somehow be determined to moot Plaintiff's claim for unpaid wages, it would by no means affect Plaintiff's claims for liquidated damages under the FLSA, as courts within the Second Circuit have routinely held that liquidated damages are recoverable under <u>both</u> the FLSA and New York Labor Law, as both are designed to remedy fundamentally different violations of law.  Recovery under both is not considered to be a "double recovery." *See, e.g. Yu G. Ke v. Saigon Grill, Inc*, 595 F. Supp. 2d 240, 260 (S.D.N.Y. 2008); *see also Gustafson v. Bell Atl. Corp.,* 171 F. Supp 2d 311, 326-27 (S.D.N.Y 2001).

### C. DEFENDANT WAS REQUIRED TO PROPERLY DISCLOSE PLAINTIFF'S FLSA RIGHTS

Defendant finally argues that Count I of the Amended Complaint should be dismissed because there is no remedy under the FLSA for the failure to provide notice of one's rights under the statute. Def.'s Mem. Supp. p. 11. However, under the FLSA, notice is required to be posted in conspicuous places, and the lack of such notice may be viewed as evidence of the Defendant's failure to comply with FLSA regulations in good faith. *See Yu G. Ke*, 595 F. Supp. 2d at 261. Thus, COTY's failure to post such notices, while not a recoverable offense *per* se, is certainly background evidence that is relevant to the willfulness of its FLSA violations.

## II.   ERISA CLAIM

Count II of the Amended Complaint alleges that COTY committed a violation of § 510 of ERISA. Specifically, Count II alleges that Plaintiff, as a COTY employee, was entitled to receive benefits under the ERISA plan sponsored by COTY, but COTY intentionally and willful interfered with Plaintiff's attainment to those benefits via its intentional misclassification of Plaintiff, during each year of Plaintiff's employment, as an independent contractor, and then via its retaliatory termination of Plaintiff's employment in response to Plaintiff's request for reclassification. Am. Complaint ¶¶ 16, 34.

COTY now argues that Plaintiff's ERISA claim is barred because: (1) it was not filed within the applicable two year statute of limitations as it was not filed within two years of the date from which Plaintiff was first classified as an independent contractor; and (2) § 510 of ERISA does not provide a remedy for the intentional, willful misclassification of an employee as an independent contractor for the express purpose of interfering with that employee's attainment of pension benefits to which he/she would have otherwise been entitled. Def.'s Mem. Supp. pp. 6-7. As discussed below, both of COTY's arguments fail.

### A.  PLAINTIFF'S CLAIM WAS PROPERLY FILED WITHIN THE TWO YEAR STATUTE OF LIMITATIONS GOVERNING ERISA § 510 CLAIMS.

Defendant first argues that Plaintiff's ERISA 510 claim is barred by the applicable two year statute of limitations because Plaintiff knew about his classification as an independent contractor at the time when Plaintiff first commenced his employment with COTY on October 21, 2002.  Def.'s Mem. Supp. p. 6.  Thus, because Plaintiff failed to bring his ERISA 510 claim within two years of that date, Defendant contends that Plaintiff's ERISA claim is time barred. *Id.*

Defendant's argument is severely flawed for two distinct reasons.  First, Plaintiff's ERISA 510 claim is not predicated on Defendant's classification of Plaintiff as an independent contractor, but is rather premised on Defendant's misclassification of Plaintiff as an independent contractor.  Thus, the relevant statute of limitation is not measured by when Plaintiff first knew or should have known that he was classified as an independent contractor, but is rather measured from when Plaintiff knew or should have known that he was misclassified as such.  In this case, there are simply no allegations in the Amended Complaint from which the Court can determine, at this state of the litigation, as a matter of law, that Plaintiff first knew or should have known that COTY had misclassified him more than two years prior to the date of commencement of this action.  In fact, besides the allegation that COTY at all times denied the existence of its misclassification of Plaintiff, the only other concrete allegation in the Amended Complaint from which the Court can calculate the accrual date of this claim is the date on which Plaintiff submitted his request for reclassification to COTY, which was July 30, 2008.  That date is within two years of the date of the commencement of this action.  Any theory that Plaintiff knew or should have known of his misclassification prior to that date, at this stage of the litigation, requires hypothesizing, which of course means that discovery is necessary on that issue. Dismissal on that basis at this stage of the litigation would be improper.

Next, Plaintiff's ERISA § 510, claim as pled in Count II, is not solely predicated on Defendant's misclassification of him as an independent contractor throughout his employment, but is also predicated on Defendant's termination of Plaintiff on October 17, 2008.  Of course, Defendant's act of terminating Plaintiff's employment denied Plaintiff the attainment of any future pension benefits to which he otherwise would have been entitled.  Thus, given that Plaintiff could not have known that COTY would terminate his employment prior to the date on which COTY actually terminated his employment, and because Plaintiff commenced this action within two years of that date, Plaintiff's ERISA § 510 is timely on its face.

## B.  DEFENDANT'S CONDUCT AS PLED IN THE AMENDED COMPLAINT IS ACTIONABLE UNDER ERISA § 510.

Defendant next argues that even if Plaintiff's ERISA allegations are timely, Plaintiff has nonetheless failed to state a claim, as courts in the Second Circuit do not recognize a cause of action under ERISA §510 for the intentional misclassification of an employee as an independent contractor for the express reason of interfering with that employee's attainment of pension benefits. Def.'s Mem. Supp. p. 7.

Section 510 of ERISA strictly prohibits "any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140; *Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 446-47 (S.D.N.Y. 2001). Quoting from this Court's decision in *Downes v. JP Morgan Chase & Co.,* No. 03 CIV. 8991(GEL), 2004 WL 1277991 at *5, Defendant argues that the mere act of hiring an individual as an independent contractor instead of as an employee for the purpose of precluding that individual from obtaining benefits is not itself actionable conduct under ERISA § 510.  Instead,

14

still quoting from *Downes*, Defendant urges that an allegation of disruption of employment for the purpose of precluding an employee from obtaining benefits is necessary to state such a claim. Def.'s Mem. Supp. p. 7.

Defendant's argument is as flawed as it is perplexing. First, while the *Downes* Court might have concluded that the act of hiring an individual as an independent contractor rather than as an employee for the purpose of preventing an individual from obtaining benefits is not *per se* actionable, the Second Circuit itself has never explicitly addressed this issue. Additionally, in reaching its conclusion, the *Downes* Court relies primarily on *Schwartz v. Independence Blue Cross*, 299 F. Supp. 2d 441, 450 (E.D.Pa. 2003), which in turn relies primarily on *Edes v. Verizon Communications Inc.*, 288 F. Supp. 2d 55, 59 (D.Mass 2003). However, the *Edes* Court never stated that the misclassification of an individual for the explicit purpose of interfering with that person's attainment of benefits was not actionable. Instead, *Edes*, as quoted directly in *Schwartz*, merely concluded that an employer's conduct in hiring employees under terms that make them ineligible for certain benefits that are available to other employees is not actionable under ERISA § 510. *Id.* That is an entirely different holding than one finding that an employer's conduct in intentionally misclassifying individuals as independent contractors rather than employees for the express purpose of interfering with that individual's attainment of benefits is not actionable under that same statute. The former deals with a permissible business decision while the latter deals with actual fraudulent and illegal conduct. Moreover, other United States Courts of Appeals that have addressed this same issue have expressly found that the mere act of the intentional misclassification of employees as independent contractors is actionable under ERISA §510. *See, e.g. Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 588-59 (11th Cir. 1997) (holding that an ERISA § 510 claim arises when a company reclassifies its employees

15

as independent contractors, if done with the specific intent to interfere with those individuals' future rights to ERISA benefits); *see also Seaman v. Arvida Realty Sales*, 985 F.2d 543 (11th Cir.1993)).   Thus, even were Plaintiff's ERISA 510 claim predicated solely on COTY's intentional misclassification of Plaintiff as an independent contractor throughout the course of his employment, there is simply no correctly reasoned opinion finding that such conduct is not actionable, nor is there binding authority from the Second Circuit stating that such a claim cannot be maintained.   Meanwhile, other circuit courts have found that such conduct is sufficient to support such a claim.   Accordingly, Defendant's argument on this point is <u>severely</u> flawed.

In addition to being legally flawed, COTY's argument on this point is also quite puzzling, as in relying on *Downes*, Defendant <u>agrees</u> that a cause of action under § 510 of ERISA can be maintained when there is an allegation of disruption of an individual's employment for the purpose of interfering with that individual's obtainment of pension benefits.   Similarly, as also demonstrated by the *Downes* language quoted by COTY in its brief, the act of "retaliat[ing] against an employee" for staking a claim to benefits under an ERISA plan, for the purpose of interfering with that individual's attainment of such benefits, is also actionable conduct under ERISA § 510. Def.'s Mem. Supp. p. 7.   However, in the Amended Complaint, Plaintiff has expressly pled that there was a disruption in his employment - - <u>he was terminated</u> - - and that such disruption was designed to preclude Plaintiff from securing benefits under ERISA to which he would be entitled in the future.   Moreover, Plaintiff has expressly pled that COTY retaliated against him for asserting a claim to such benefits.   Such allegations are contained in paragraph 16 of the Amended Complaint, where it states that "in response to Plaintiff's just mentioned request for reclassification, COTY *retaliated* against Plaintiff by illegally terminating Plaintiff's employment." (Emphasis added). *See also* Am. Complaint at ¶¶ 38-39.   Thus, in accordance with

the exact case law cited by Defendant, Plaintiff has more than sufficiently pled conduct on the part of COTY amounting to an actionable violation of ERISA §510.

## III.   RICO CLAIM

Count III of the Amended Complaint alleges that Defendant engaged in a pattern of racketeering activity via its annual commission of mail fraud.  Specifically, the Amended Complaint states that COTY, each year, on or before the deadline established by federal law, committed mail fraud by intentionally mailing Plaintiff, via the United States Postal Service (or its competitor), a 1099 tax form rather than a W-2. Am. Complaint ¶¶ 21-22.  As is common knowledge, via its annual mailing of the 1099 form, COTY communicated to Plaintiff the nature and extent of the tax burdens for which Plaintiff would be responsible each year, and, correspondingly, for which COTY would not be responsible each year.  Such tax forms were also prepared outside of the New York metropolitan area, and were only deliverable to COTY employees residing in the New York metropolitan area, such as Plaintiff, via use of the United States Postal Service (or one of its competitors). *Id.*  Upon receipt of such tax forms via COTY's fraudulent use of the mail, Plaintiff became aware that he was responsible for paying certain tax burdens, which Plaintiff did pay in the amount of $24,000.  But for and as a proximate cause of COTY's fraudulent use of the mail in such capacity, Plaintiff would not have been aware that he was responsible for making such payment, and thus would not have been financially injured in such a manner.  Concomitantly, but for and as a proximate cause of its fraudulent use of the mail, COTY would have been ultimately liable for making such payment, and thus would not have directly benefited in such a financial manner. *Id.*  COTY then used or invested, either directly or indirectly, some or all of the proceeds that it derived pursuant to its annual commission of mail fraud to either acquire an interest in, or to establish or operate part or all of its business.  *Id.* ¶ 23.

Coty now argues that Plaintiff's RICO claim is legally deficient for the following four (4) reasons: (1) Plaintiff has not pled mail fraud with requisite particularity; (2) Plaintiff lacks standing as a RICO plaintiff because he has not alleged that he was injured by COTY's predicate acts; (3) such claim is preempted by the FLSA and other federal laws; and (4) such claim is time barred. Def.'s Mem. Supp. pp. 12-19.  As explained below, all of Defendant's arguments fail.

### A.  THE AMENDED COMPLAINT PLEADS MAIL FRAUD WITH SUFFICIENT PARTICULARITY.

To state a claim for damages under RICO, 18 U.S.C. § 1964, a Plaintiff must allege that: (1) the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962; and (2) he/she has suffered an injury to his/her business or property via the Defendant's 18 U.S.C. § 1962 violation. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) ("Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden *i.e.,* invoking RICO's civil remedies of treble damages, attorneys fees and costs.").  As applied in the Second Circuit, to state a claim under the civil RICO statute invoked in the Amended Complaint, a Plaintiff must plead the following seven elements: (1) that the defendant; (2) through the commission of two or more acts; (3) constituting a pattern; (4) of racketeering activity; (5) directly or indirectly invests, maintains an interest in, or participates in; (6) an enterprise; (7) the activities of which affect interstate or foreign commerce."*Id.*  The act of engaging in mail fraud constitutes a "racketeering activity" in satisfaction of the fourth element stated above. 18 U.S.C. § 1961(1).  To adequately plead mail fraud, there must be an allegation that: (1) the Defendant devised or intended to devise a fraudulent scheme; (2) for the purpose of obtaining money or property by false pretenses; (3) by means of the delivery of mail.  Pertaining to that third element, there must be an allegation that: (1) the Defendant "caused" the mailing, with there being no requirement that the

Defendant personally mailed the letter; and (2) the mailing was for the purpose of executing the scheme or was incidental to an essential part of the scheme. *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).  Thus, to state a claim under RICO, with mail fraud as the underlying, predicate crime, a Plaintiff must allege all of the required RICO elements, as well as all of the elements required for the underlying violation of the mail fraud statute.

Defendant raises several arguments as to how the Amended Complaint fails to plead mail fraud with particularity, all of which, as explained below, fail on their face.

### 1.   Plaintiff has adequately described the statements/mailings comprising this claim.

Defendant first argues that Plaintiff has failed to identify with particularity the fraudulent statements made by Defendant. Def.'s Mem. Supp. pp. 12-13.  When a RICO claim is predicated on mail fraud, the pleading must sufficiently identify the statements/mailings at issue in order to satisfy FRCP 9(b). *Eldred v. Comforce Corp.*, No. 3:08-CV-1171 (LEK/DEP), 2010 WL 812698,*10 (N.D.N.Y. Mar. 2, 2010).   However, in this case, the Amended Complaint adequately describes what Defendant mailed, when it was mailed, how it was mailed, and how such mailing fit into Defendant's fraudulent scheme.   Specifically, the Amended Complaint adequately: (a) identifies the particular statements of COTY that it contends are fraudulent or misleading; (b) identifies why those statements were false or misleading; (c) identifies when and where the statements were allegedly made; and (d) identifies who was responsible for them. Thus, the Amended Complaint describes Defendant's statements with sufficient particularity.

#### a. *The Amended Complaint identifies COTY's false or misleading statements.*

In arguing that the Amended Complaint fails to adequately state a claim for mail fraud that can support a civil RICO claim, Defendant first argues that Plaintiff has not identified the "statements" of Defendants that it contends were false or misleading. Def.'s Mem. Supp. pp. 12-

13.  However, the Amended Complaint explicitly alleges that COTY intentionally mailed the wrong 1099 tax form to Plaintiff during each year of Plaintiff employment. Am. Complaint ¶ 21 Such tax forms are in fact alleged to be "statements" of COTY.  Moreover, COTY's argument that Plaintiff has not specifically pled the specific contents of those 1099 forms is laughable, as a 1099 tax form is a standard document that <u>always</u> contains the same categories of information. Thus, Plaintiff has adequately alleged and the identified COTY's false or misleading statements.

        b.  *<u>The Amended Complaint identifies why and how such statements were false or misleading.</u>*

Defendant next argues that Plaintiff has not identified how such statements were false or misleading. Def.'s Mem. Supp. p. 13.  However, the Amended Complaint specifically lists some of the burdens and contributions that Defendant's statements shifted to Plaintiff each year. Am. Complaint ¶ 22.  Such pleading makes this case easily distinguishable from *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 323 (E.D.N.Y. 2004), which Defendant relies on for the proposition that a RICO pleading must specifically allege the misleading nature of a fraudulent statement.   In *Mathon*, there was no allegation whatsoever that an un-dated conversation and unpaid promissory note, sent via mail, were fraudulent. *See id*.  Here, by contrast, the Amended Complaint explicitly states that COTY's intentional distribution of the wrong tax form fraudulent, and also describes how COTY's use of such documents was fraudulent. Am. Complant ¶¶ 21-24.  Thus, Plaintiff has adequately alleged why and how COTY's statements were false or misleading.

        c.  *<u>The Amended Complaint indentifies when and where COTY's statements were made.</u>*

Defendant next argues that the Amended Complaint does not identify when and where such statements were made. Def.'s Mem. Supp. p. 13.   However, Count III alleges that

Defendant mailed Plaintiff such tax forms, on a yearly basis, throughout Plaintiff's tenure of employment with Defendant. Am. Complaint ¶ 21.  Such allegation necessarily implies that those tax forms were mailed each year in compliance with 26 U.S.C. § 6041A, which states that tax form 1099 should be issued no later than January 31 of each year. Am. Complaint ¶ 22. Moreover, the Amended Complaint alleges that such forms were prepared at COTY's direction, which of course implies that the forms originated from COTY's principal place of business as identified in paragraph 5 of the Amended Complaint.  Such allegations make this claim easily distinguishable from *Alnwick v. European Micro Holdings, Inc*, 281 F. Supp. 2d 629, 640-41 (E.D.N.Y. 2003), relied on by Defendant for the proposition that a "vague window of time" is not sufficient to identify when an alleged fraudulent RICO statement was made.  In *Alnwick*, the fraudulent RICO statement was alleged to be an oral agreement, and the pleading did not specify what each defendant actually said, nor did it state when and where the oral conversations took place.  That is obviously quite different than the allegations in this case, in which the fraudulent statements are alleged to be written, standard tax documents, mailed by the same legally required date each year, originating at the direction and from the principal place of business of the corporate defendant.

### d. *The Amended Complaint adequately indentifies who mailed the statements.*

Defendant next argues that the Amended Complaint fails to identify who was responsible for mailing the tax forms each year, and states that such failure makes Count III deficient. Def.'s Mem. Supp. p. 13.  For support, COTY relies on *Eldred v. Comforce Corp.*, 2010 WL 812698 (N.D.N.Y. 2010) and *Conte v. Newsday, Inc.*, 2010 WL 1257887 (E.D.N.Y. 2010), and claims that those cases dismissed RICO claims due to those Plaintiffs' failures to identify who specifically made the statements at issue.  However, such cases are incredibly distinguishable

from this one, as the defendants in *Eldred* were individuals, while the defendants in *Conte* were several employees and non-employees from a corporation.  Accordingly those courts found the respective pleadings' failures to identify the specific defendant responsible for making each fraudulent statement to be an incurable deficiency.  In this case, the Defendant is only one corporation, and the Amended Complaint specifically imputes responsibility for the statements at issue to that one and only organization, as a whole.  As such, the Amended Complaint adequately identifies the party responsible for the statements comprising Plaintiff's RICO claim.

> 2.   The Amended Complaint alleges that COTY used the mail "in furtherance" of its racketeering scheme.

COTY next argues that the Amended Complaint fails to allege that COTY used the mail "in furtherance" of its fraudulent scheme.  Def.'s Mem. Supp. 14.  However, as explained above, the Amended Complaint clearly alleges that but for and as a proximate cause of COTY's use of the mail, Plaintiff would not have paid certain taxes and burdens, while COTY would have instead paid such taxes and burdens, or at least remained ultimately responsible for paying such tax and burdens.  Thus, the Amended Complaint fulfills this pleading requirement.

3.   The Amended Complaint contains allegations of COTY's fraudulent intent.

 COTY's final arguments as to why Count III fails to plead mail fraud with particularity is that absent from the pleading is any allegation of COTY's intent to defaud Plaintiff. Specifically, COTY argues that the allegation that it mailed Plaintiff 1099 tax forms would only serve to put Plaintiff on notice of COTY's scheme, which would then undermine the argument that COTY's use of the mail was undertaken as an intent to defraud Plaintiff. Def.'s Mem. Supp. pp. 15-16.  However, absent from COTY's reasoning is the fact that such mailings were designed to legitimize COTY's fraudulent scheme. *See generally Leung v. Law*, 387 F. Supp. 2d 105, 116

(E.D.N.Y. 2005) (citing *United States v. Angelilli,* 660 F.2d 23, 37 (2d Cir.1981)) (recognizing mailing designed to legitimize fraudulent scheme as evidence of fraudulent intent).  Similarly, here, COTY's mailings legitimized its entire fraudulent scheme.  Moreover, further evidence of COTY's fraudulent intent can easily be inferred from the express allegations that both federal and state agencies to review COTY's actions determined that COTY acted in utter bad faith in swindling its employees.  Thus, Count III adequately alleges fraudulent intent by COTY sufficient to support Plaintiff's RICO claim predicated on COTY's commission of mail fraud.

## B.  PLAINTIFF HAS STANDING AS A RICO PLAINTIFF.

Defendant next argues that Plaintiff lacks standing under RICO due to the Amended Complaint's purported failure to allege an injury that was proximately caused by COTY's commission of mail fraud.  Def.'s Mem. Supp. p. 17.  Specifically, COTY contends that Plaintiff's injuries, as alleged, were not proximately caused by COTY's use of the mails, but were rather caused by COTY's misclassification of Plaintiff as an independent contractor rather than as an employee.  Instead, COTY argues that its use of the mails was merely incidental to, and not a proximate cause of, Plaintiff's injuries.

COTY's argument fails because as discussed in detail above, the Amended Complaint contains clear allegations that but for and as a proximate result of COTY's use of the mails, Plaintiff would not have incurred very specific financial injuries, as Plaintiff would not have paid certain taxes and contributions, while COTY would have been ultimately responsible for paying such taxes and contributions.  Moreover, the injuries proximately caused by COTY's fraudulent use of the mail are separate and distinct than the injuries caused by COTY's misclassification of Plaintiff as an independent contractor; COTY's misclassification denied Plaintiff wages and benefits to which he would have been otherwise entitled, while COTY's fraudulent use of the

23

mails caused Plaintiff to pay certain taxes and contributions that he would not have otherwise paid, and for which COTY would have been liable if not paid.  Of course, at this 12(b)(6) stage of the litigation, Plaintiff's pleading is entitled to a presumption of truthfulness.  Thus, given the pleading's allegations that Plaintiff suffered separate and distinct injuries as a proximate and direct result of COTY's fraudulent use of the mails, Plaintiff has properly alleged that COTY's commission of mail fraud was a proximate cause of his injuries, and properly pled standing.

### C.  PLAINTIFF'S RICO CLAIM IS NOT PREEMPTED.

Defendant next argues that Plaintiff's RICO claim is preempted by the FLSA, as well other federal laws such FUTA and FICA. Def.'s Mem. Supp. p. 18.  COTY's argument pertaining to the FLSA is premised on the fact that courts have held that where one statute provides an exclusive remedy, a RICO claim based on that same conduct should be dismissed. *Id*.  Plaintiff's claims for unpaid wages and liquidated damages under the FLSA are being addressed via Count I of the Amended Complaint.  Plaintiff's RICO claim is based on an entirely different set of facts, namely COTY's fraudulent use of the mails to shift tax burdens and contributions to Plaintiff and away from COTY.   Thus, COTY's preemption argument as it pertains to the FLSA is irrelevant.

Next, COTY argues that Plaintiff's RICO claim based on those separate and distinct facts is preempted by FUTA and FICA.  However, as COTY admits in its brief under its FLSA preemption argument, a statute must provide an exclusive remedy in order to preempt RICO claims based on the same set of facts. *Id*. Citing *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634 (2d. Cir 1989).  Unlike the FLSA, COTY has not cited to a single case (because none exists) in which a court has held that either FUTA or FICA provides an <u>exclusive</u> remedy for facts comprising a violation of either act.  Instead, the cases cited by COTY in support of its

FUTA and FICA preemption argument all state, in varying ways, that claims alleging mere misclassification are not actionable under RICO.  Not one of those cases, however, contained an allegation where mail fraud was the underlying predicate act giving rise to the RICO violation. Of course, where allegations of mail fraud are at issue, those allegations may always serve as the predicate act for a RICO violation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008).  As long as the elements of RICO and mail fraud have been properly pled, a RICO cause of action is appropriate.  Here, Plaintiff has adequately alleged that COTY committed mail fraud as an underlying RICO violation.  Plaintiff's RICO claim is not preempted by FICA or FUTA.

### D.  PLAINTIFF'S RICO CLAIM IS TIMELY

Lastly, COTY argues that Plaintiff's RICO claim is barred by the applicable four (4) year statute of limitations because Plaintiff should have known or reasonably discovered his alleged injuries on January 31, 2003, which was when Plaintiff first received a 1099 form from COTY. Def.'s Mem. Supp. p. 19.   However, as the Amended Complaint alleges, COTY committed separate and discrete acts of mail fraud during <u>each</u> individual year of Plaintiff's employment. Am. Complaint ¶ 21.  Plaintiff could not have possibly known (either actually or constructively) or anticipated on that first occasion that COTY would commit mail fraud each subsequent year. Thus, each instance of COTY's mail fraud committed within four years of the commencement of this action is timely.

### VI.    PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.

Should the Court determine that some or all of Plaintiff's claims have been improperly pled, Plaintiff should be granted leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which courts liberally grant as justice so requires. *Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 251 (2d Cir. 1994).

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's Motion to Dismiss should be denied in its entirety.

Dated:  Carle Place, NY
        December 28, 2010


                          Respectfully submitted,

                          The Law Office of
                          BORRELLI & ASSOCIATES, P.L.L.C.
                          By : /s/ Alexander T. Coleman, Esq. (AC1717)
                          *Attorneys for Plaintiff*
                          One Old Country Road, Suite 347
                          Carle Place, NY 11514
                          Tel. (516) 248 - 5550
                          Fax. (516) 248 – 6027


To:     All parties via ECF