UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                 :

OHAN KARAGOZIAN,                 :
                                 :

                Plaintiff,       :
                                 :

    -against-                    :   10 CV 5482 (RMB)(FM)
                                 :

COTY US LLC, a/k/a COTY INC.,  :
                               :

               Defendant.    :
                               :
------------------------------------------------------------ X

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Attorneys for Defendant

Table of Contents

Table of Authorities ........................................................................................................... ii

Preliminary Statement ........................................................................................................ 1

Argument ............................................................................................................................ 4

I.      PLAINTIFF'S ERISA CLAIMS SHOULD BE DISMISSED ................................ 4

        A.      Plaintiff's ERISA Claims Are Untimely .................................................... 4

        B.      Coty's Classification of Plaintiff as an Independent Contractor
                Does Not Violate ERISA Section 510 ......................................................... 6

II.     PLAINTIFF'S FLSA CLAIMS SHOULD BE DISMISSED ................................. 8

        A.      Plaintiff Waived His Rights under the FLSA by Entering into the Stipulation ........... 8

        B.      Plaintiff's FLSA Overtime Claim Is Moot ................................................ 10

        C.      Plaintiff Cannot Recover for Coty's Alleged Failure to Apprise Him
                of His Rights under the FLSA ..................................................................... 12

III.    PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED ................................. 12

        A.      Plaintiff Fails to Plead Mail Fraud with Particularity ............................... 12

        B.      Plaintiff Lacks Standing under RICO ......................................................... 14

        C.      Plaintiff's RICO Claims Are Preempted .................................................... 15

        D.      Plaintiff's RICO Claim Is Untimely .......................................................... 17

IV.     PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND HIS
        COMPLAINT A SECOND TIME ......................................................................... 18

Conclusion .......................................................................................................................... 19

Table of Authorities

CASES

*Barnard v. Advance Pension Plan,*
  Civ. No. 06-6265-HO, 2009 WL 1227734 (D. Or. Apr. 27, 2009) .......................... 5

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................... 14

*Brennan v. Metropolitan Life Ins. Co.,*
  275 F. Supp. 2d 406 (S.D.N.Y. 2003) .................................................... 5

*Cavallaro v. UMass Memorial Health Care, Inc.,*
  No. 09-40152-FDS, 2010 WL 3609535 (D. Mass. July 2, 2010) ............................ 13

*Collins v. E-Magine, LLC,*
  291 A.D.2d 350 (N.Y. App. Div. 1st Dep't 2002) ....................................... 9

*Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.,*
  271 F.3d 374 (2d Cir. 2001) .......................................................... 14

*Corines v. Charter One Bank,*
  365 Fed. App'x 237 (2d Cir. 2010) .................................................... 8

*Cover v. American Postal Workers Union-AFL-CIO,*
  357 Fed. App'x 336 (2d Cir. 2009) .................................................... 11

*Downes v. JP Morgan Chase & Co.,*
  No. 03 Civ. 8991 (GEL), 2004 WL 1277991 (S.D.N.Y. June 8, 2004) ................... 5, 6

*Eldred v. Comforce Corp.,*
  No. 3:08-CV-1171, 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) ......................... 15, 17

*Endovasc, Ltd. v. J.P. Turner & Co., LLC,*
  169 Fed. App'x 655 (2d Cir. 2006) .................................................... 18

*Gifford v. Meda,*
  No. 09-cv-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010) ........................... 16

*Gitlitz v. Compagnie Nationale Air France,*
  129 F.3d 554 (11th Cir. 1997) ......................................................... 7

*Golden Pacific Bancorp v. F.D.I.C.,*
  273 F.3d 509 (2d Cir. 2001) .......................................................... 9

*Leung v. Law,*
  387 F. Supp. 2d 105 (E.D.N.Y. 2005) ............................................... 13, 14

*Lignore v. Hospital of the University of Pennsylvania,*
No. 04-5735, 2007 WL 1300733 (E.D. Pa. May 1, 2007) .................................................... 10

*Manning v. New York University,*
98 Civ. 3300 (NRB), 2001 WL 963982 (S.D.N.Y. Aug. 22, 2001) ...................................... 10

*Martin v. PepsiAmericas, Inc.,*
No. 09-60896, 2010 WL 5300827 (5th Cir. Dec. 28, 2010) .................................................. 11

*McGee v. State Farm Mutual Auto Ins. Co.,*
No. 08-CV-392 (FB)(CLP), 2009 WL 2132439 (E.D.N.Y. July 10, 2009) .......................... 13

*McLaughlin v. American Tobacco Co.,*
522 F.3d 215 (2d Cir. 2008) .................................................................................................. 17

*McLaughlin v. Anderson,*
962 F.2d 187 (2d Cir. 1992) .................................................................................................. 13

*McLellan v. E.I. DuPont de Nemours & Co., Inc.,*
No. 04-CV-314, 2006 WL 3751583 (W.D.N.Y. Dec. 19, 2006) ............................................ 6

*Merrill Lynch Ltd. Partnerships Litigation,*
154 F.3d 56 (2d Cir. 1998) .................................................................................................... 17

*National Union Fire Insurance Co. v. Walton Insurance Ltd.,*
696 F. Supp. 897 (S.D.N.Y. 1988) .......................................................................................... 9

*Norman v. Niagara Mohawk Power Corp.,*
873 F.2d 634 (2d Cir. 1989) .................................................................................................. 17

*Ross v. Albany Medical Center,*
916 F. Supp. 196 (N.D.N.Y. 1996) ........................................................................................ 10

*Seaman v. Arvida Realty Sales,*
985 F.2d 543 (11th Cir. 1993) ................................................................................................. 7

*Vandermark v. City of New York,*
615 F. Supp. 2d 196 (S.D.N.Y. 2009) .................................................................................... 15

*W.W.W. Associates, Inc. v. Giancontieri,*
77 N.Y.2d 157 (N.Y. 1990) ...................................................................................................... 9

*Williams v. American Int'l Group, Inc.,*
No. 01 Civ. 9673 (CSH), 2002 WL 31115184 (S.D.N.Y. Sept. 23, 2002) .............................. 6

*Williams v. Time Warner Inc.,*
No. 09 Civ. 2962 (RJS), 2010 WL 846970 (S.D.N.Y. Mar. 3, 2010) .................................... 18

<u>Preliminary Statement</u>

Plaintiff's memorandum of law in opposition to Coty's motion to dismiss ("Pl. Mem.") consists of convoluted and circular arguments, and mischaracterizations of both law and fact, including as to the allegations of plaintiff's own amended complaint. Because, as set forth below, plaintiff's tactics only serve to confirm the inadequacy of each of his claims, Coty's motion to dismiss the amended complaint should be granted in its entirety.

First, with respect to plaintiff's ERISA Section 510 claim based on his alleged misclassification as an independent contractor, plaintiff admits he was aware of his classification from at least as early as January 31, 2003, the date he received his first IRS Form 1099 from Coty. Although plaintiff contends that the two-year limitations period applicable to such claims should begin to run not from the date he knew of his classification, but from some unspecified future date when he supposedly came to believe that such classification was improper, he offers no authority for that novel proposition. Indeed, if accepted, that proposition would effectively extend indefinitely the time for filing such a claim, based on nothing more than a plaintiff's *ipse dixit* that he was unaware not of the facts underlying his claim, but of the legal impact of such facts. Such a result is untenable. (*See* Point I.A, *infra*.)

Plaintiff similarly cites no controlling authority to rebut Coty's argument – supported by case law in this circuit – that alleged misclassification of an individual as an independent contractor is insufficient to sustain a claim for interference with employment benefits under ERISA Section 510. Indeed, even the out-of-circuit decisions upon which plaintiff purports to rely involve not individuals (like plaintiff) who were allegedly misclassified from the outset of their working relationship and thus never became entitled to benefits, but rather individuals who were formerly classified as employees and had satisfied the age and service requirements to qualify for benefits before their employer reclassified them as independent contractors, thereby allegedly interfering with their rights to such benefits. Plaintiff's need to rely on

inapposite case law from other jurisdictions only highlights the infirmity of his ERISA Section 510 claim in this case. (*See* Point I.B, *infra*.)

To support his FLSA claims for overtime wages, plaintiff resorts to mischaracterization of the Stipulation he entered into with the NYSDoL and Coty, which unambiguously provides that the amounts paid by Coty thereunder were "in full and final satisfaction of all . . . claims of unpaid wages and wage supplements, including . . . overtime compensation." Tacitly conceding the lack of merit of his contention that the Stipulation does not apply to his FLSA overtime wage claims, plaintiff falls back on the argument that, because the Stipulation was supervised by the NYSDoL (as opposed to the USDoL or a court), it should be deemed ineffective as a waiver of such claims. Significantly, plaintiff does not dispute that the NYSDoL supervised his settlement with Coty, nor does he allege that he was coerced into signing the Stipulation, or that any his rights were not adequately safeguarded, nor does he articulate any other reasoned basis for ignoring the express waiver of claims embodied in the Stipulation. Accordingly, dismissal of plaintiff's FLSA claims is appropriate. (*See* Point II.A, *infra*.)

Further, in response to Coty's argument that the amounts expressly paid plaintiff under the Stipulation for overtime wages exceed any amount recoverable by plaintiff under his FLSA overtime wage claim (thus effectively mooting that claim), plaintiff argues – again, without citation to a single authority – that Coty is not entitled to any set-off for such amounts. Of course, plaintiff's attempt to recover twice for the same alleged injury is insupportable as a matter of law. (*See* Point II.B, *infra*.)[1]

Nor does plaintiff offer any substantive or reasoned response to any of Coty's multiple arguments for dismissal of RICO claims. Specifically, although plaintiff purports to base those claims on Coty's supposed commission of "mail fraud" by allegedly mailing 1099 tax forms to

---

[1] Plaintiff concedes in his opposition papers that his claim based on Coty's alleged failure to apprise him of his rights under the FLSA fails to state a claim, and, accordingly, that claim should be dismissed. (*See* Point II.C, *infra*.)

him, plaintiff fails to identify any statement or information contained on any such form that was "false or misleading," as required to state a claim under RICO. Plaintiff similarly fails to point to any allegation of fact that would shed light on how Coty's mailing of the 1099s was intended to deceive plaintiff, also a prerequisite for a claim under that statute. And, plaintiff offers no response to the point that, if anything, Coty's mailing of the tax forms to plaintiff would have *alerted* him to the allegedly fraudulent scheme, not *concealed* it. (*See* Point III.A, *infra*.)

The remainder of plaintiff's arguments in support of his RICO claims are equally infirm, each resting on the erroneous premise that it was Coty's alleged mailing of the 1099s (the sole RICO "predicate act" alleged in the amended complaint), and not its alleged misclassification of plaintiff as an independent contractor, that caused his alleged "injuries," *i.e.*, his incurrence of certain tax liabilities. Because that argument finds support in neither law nor logic, plaintiff cannot show that he suffered an injury proximately caused by that predicate act, and, accordingly, he lacks standing to sue under RICO. (*See* Point III.B, *infra*.)

Similarly, in response to Coty's argument that his RICO claims are preempted by the FLSA or the tax laws, plaintiff relies on the same artifice, that his RICO claims are based not on his misclassification as an independent contractor, but on Coty's mailing of the 1099s. Because, as noted above, that argument is fundamentally flawed, plaintiff's contention that his so-called RICO claims – which, even giving the amended complaint the benefit of every favorable inference, remain nothing more than garden variety claims for misclassification under the FLSA – are not preempted by that statute, is groundless. (*See* Point III.C, *infra*.)

Finally, plaintiff's argument that his RICO claims were timely asserted is based on the premise that, although he received his first 1099 form confirming his independent contractor no later than January 31, 2003, each annual mailing of 1099s by Coty constituted a new "predicate act" that started the limitations period running anew. In so arguing, however, plaintiff ignores settled law that the four-year statute of limitations under RICO begins to run not when plaintiff

learns of the alleged predicate act, but when he discovers, or reasonably should have discovered, the alleged injury. Because plaintiff admits that he became aware of the RICO injuries of which he now purports to complain (*i.e.*, his tax liabilities as an independent contractor) no later than January 31, 2003, his failure to commence this action within four years of that date requires dismissal of his RICO claim. (*See* Point III.D, *infra*.)[2]

For the reasons set forth below and in its moving memorandum of law ("Def. Mem."), Coty respectfully submits that the amended complaint should be dismissed, in its entirety.

Argument

I.

PLAINTIFF'S ERISA CLAIMS SHOULD BE DISMISSED

A.    Plaintiff's ERISA Claims Are Untimely

Plaintiff does not dispute that the limitations period for ERISA Section 510 claims is two years, nor does he dispute that he was aware of his classification by Coty as an independent contractor from the time he began working at Coty in October 2002. Rather, plaintiff purports to base his argument that his ERISA claim is timely on his assertion that the limitations period "is not measured by when Plaintiff knew or should have known that he was classified as an independent contractor, but . . . from when Plaintiff knew or should have known that he was misclassified as such" (*see* Pl. Mem. at 13, underscoring in original).

Not surprisingly, plaintiff offers not a single citation to any authority in support of that proposition, because there is none. As pointed out in Coty's moving papers (Def. Mem. at 6), "all of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when

---

[2]    Nor should this Court grant plaintiff's request that, should any of the claims asserted in his amended complaint be deemed insufficient, he be permitted to amend his complaint a second time, especially in the absence of any representation by plaintiff (who left Coty in October 2008) that he has any new facts or evidence that would warrant such further amendment. (*See* Point IV, *infra*.)

the beneficiary first learns that [he] is an independent contractor and is therefore not entitled to benefits," not at some later point when he takes the position that such classification is incorrect (*Brennan v. Metropolitan Life Ins. Co.*, 275 F. Supp. 2d 406, 409-10 (S.D.N.Y. 2003) (holding ERISA claim time-barred where "all of the plaintiffs knew from their first day of work that they were working as freelancers and would not be entitled to benefits"); *see also Barnard v. Advance Pension Plan*, Civ. No. 06-6265-HO, 2009 WL 1227734, *2 (D. Or. Apr. 27, 2009) (holding that it is plaintiff's knowledge of the operative facts, and not his understanding of the legal impact of such facts, that commences running of the limitations period in ERISA claim)). Indeed, plaintiff's timeliness argument, if accepted, could eviscerate the limitations period in virtually any case, as any failure to timely file could be cured via the simple expedient of an assertion by plaintiff that he was unaware that his classification was incorrect until some date within two years prior to filing his complaint. As such a result would be untenable, plaintiff's argument must be rejected.

While plaintiff asserts that "the only . . . concrete allegation in the Amended Complaint from which the Court can calculate the accrual date of this claim is the date on which Plaintiff submitted his request for reclassification to Coty, which was July 30, 2008" (Pl. Mem. at 13), that is not the case. To the contrary, throughout his opposition papers as well as in his amended complaint, plaintiff repeatedly admits that Coty provided him an IRS Form 1099 "each year [that he worked for the Company], on or before the deadline established by federal law," *i.e.*, January 31st (Pl. Mem. at 5, 17 & 21; Am. Cmplt., ¶¶ 21, 22). Since plaintiff began working for Coty in October 2002 (Am. Cmplt., ¶ 10), the first such form was mailed to plaintiff no later than January 31, 2003. Plaintiff also admits that such 1099 forms "directly informed [him] of the nature and extent of the tax burdens for which he would be responsible each year" (Pl. Mem. at 5).

Plaintiff's admissions provide ample basis for this Court to infer that plaintiff was aware, or should have been aware, from at least as early as January 31, 2003, of his classification as an independent contractor.  Indeed, any contrary inference would be "implausible" (*Downes v. JP Morgan Chase & Co.*, No. 03 Civ. 8991 (GEL), 2004 WL 1277991, *4 & n.5 (S.D.N.Y. June 8, 2004) ("no rule of law requires the court to indulge the assumption, which cannot fairly be inferred from any of the facts alleged in the complaint, that the plaintiff remained unaware of her own employment status, and had no idea she was not receiving medical, sick leave or vacation benefits, for years after allegedly commencing full-time work with [defendant]")).

Plaintiff did not file his complaint in this action until July 19, 2010 (*see* Pl. Mem. at 1). Accordingly, his ERISA claim is untimely, and must be dismissed.[3]

B.   Coty's Classification of Plaintiff as an Independent
     Contractor Does Not Violate ERISA Section 510

As explained in Coty's moving papers, courts in this circuit have considered the precise claim asserted by plaintiff in this case – *i.e.*, that defendant violated ERISA Section 510 by hiring plaintiff as an independent contractor, thus depriving him of benefits under defendant's ERISA plans – and concluded that no such claim exists, as a matter of law (*see Downes,* 2004 WL 1277991 at *5 (holding that plaintiff's claim that "the act of hiring her as an independent contractor, instead of as a regular employee" violated Section 510 was "untenable in law"); *accord McLellan v. E.I. DuPont de Nemours & Co., Inc.*, No. 04-CV-314, 2006 WL 3751583, *22 (W.D.N.Y. Dec. 19, 2006) ("courts within this circuit . . . have held that no cause of action

---

[3]   In a last ditch attempt to save his ERISA Section 510 claim from dismissal on timeliness grounds, plaintiff asserts, for the first time, that such claim is based not only on his alleged misclassification as a independent contractor, but also on Coty's termination of his services in October 2008 (*see* Pl. Mem. at 14).  That assertion finds support neither in the amended complaint (which contains no allegation that Coty terminated plaintiff to deprive him of ERISA benefits), nor in logic.  Since plaintiff was never classified as an employee of Coty, his termination had no effect whatsoever on his entitlement to "vested or soon-to-be vested employee benefits," as required to state a claim under Section 510 (*see Downes,* 2004 WL 1277991 at *5).

lies under Section 510 for an alleged misclassification of one's employee status"); *Williams v. American Int'l Group, Inc.*, No. 01 Civ. 9673 (CSH), 2002 WL 31115184, *2 (S.D.N.Y. Sept. 23, 2002) (plaintiff's contention "that the act of hiring her as a temporary employee, instead of as a regular employee" violated ERISA Section 510 held "untenable in law")).

Plaintiff acknowledges the authority in the Second Circuit, but argues – based solely on two decisions from the Eleventh Circuit, *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554 (11th Cir. 1997), and *Seaman v, Arvida Realty Sales*, 985 F.2d 543 (11th Cir. 1993) – that "there is no correctly reasoned opinion finding that such conduct is not actionable" (Pl. Mem. at 15-16). Plaintiff's self-serving proclamation as to what does or does not constitute a "correctly reasoned" opinion notwithstanding, he points to no controlling authority that alleged misclassification can support an ERISA Section 510 claim.

Moreover, even the Eleventh Circuit decisions upon which plaintiff purports to rely fail to support his proposition that misclassification is sufficient to support such a claim. In *Gitlitz*, for example, plaintiffs were employees whom defendant reclassified as independent contractors after they had already satisfied the age and service requirements necessary to qualify for benefits under defendant's pension plan (129 F.3d at 556). As the change in status imposed by defendant in that case caused plaintiffs to lose those vested benefits, the *Gitlitz* court held that plaintiffs were able to state a cognizable claim under ERISA Section 510 (*id.* at 558-60).[4]

Here, in contrast, plaintiff was *never* classified as an employee of Coty, and *never* became entitled to benefits under its ERISA plans. As plaintiff can point to no decision of any court holding that misclassification of an individual from the outset of his or her relationship with an employer constitutes the "disruption of" or "interference with" benefits required to support an ERISA

---

[4]   The other Eleventh Circuit decision upon which plaintiff purports to rely, *Seaman*, involved similar facts, *i.e.*, defendant's attempt to reclassify plaintiff from an employee (who had participated in its benefits plan) to an independent contractor (who was not entitled to participate in such plan) (985 F.2d at 544).

Section 510 claim, the Second Count of the amended complaint should be dismissed.[5]

II.

PLAINTIFF'S FLSA CLAIMS SHOULD BE DISMISSED

A.    Plaintiff Waived His Rights under the
FLSA by Entering into the Stipulation

In his zeal to sustain his claim for overtime wages under the FLSA, plaintiff struggles to avoid the effect of the Stipulation he entered into with the NYSDoL and Coty concerning such wages, first, by misrepresenting the terms of the Stipulation, and, second, by contending that the express waiver of plaintiff's claims to such wages contained therein is invalid as a matter of law. Neither argument has merit.

With regard to his first argument, plaintiff remarkably asserts that "[e]xplicitly exempted from the parties' stipulation is any claim that does not pertain to wages, as well as any claim that arises under federal law" (Pl. Mem. at 8).  However, the Stipulation signed by plaintiff, Coty and the NYSDoL may be searched in vain for any such "exemption" (*see* Sheinfeld Decl., Exh. H). Rather, the Stipulation expressly recited that Coty's payment thereunder was "in full and final satisfaction of *all* (i) claims of unpaid wages and wage supplements, including, without limitation, wages, *overtime compensation*, vacation, holiday, bereavement, sick pay or other leaves; and (ii) penalties, interest or damages of any kind whatsoever related to the claims herein" (*id.*, emphasis supplied).  Indeed, the only claims "exempted" from the Stipulation were those concerning "health and medical, dental or out-of-pocket health costs" (*id.*).

---

[5]    Although plaintiff further argues that his amended complaint alleges that Coty terminated him for the purpose of disrupting his entitlement to pension benefits (*see* Pl. Mem. at 16), the amended complaint may be searched in vain for any such allegation.  To the contrary, the amended complaint specifically alleges that plaintiff was terminated for opposing Coty's misclassification (Am. Cmplt., ¶ 16), and that plaintiff was misclassified (*not* terminated) to interfere with his right to benefits (*id.*, ¶¶ 38-40).  In any event, plaintiff's argument is unavailing, since, as pointed out above, plaintiff was never classified as an employee of Coty, and therefore his termination had no effect whatsoever on his entitlement to vested or soon-to-be vested benefits (*see* note 3, *supra*).

8

Where, as here, the parties' intent to effect a general release of all claims is evident from the language of the agreement itself, a court should enforce the agreement in accordance with that intent (*Corines v. Charter One Bank*, 365 Fed. App'x 237, 238-39 (2d Cir. 2010) (further noting that, "[w]hen the words of the release are of general effect the release is to be construed most strongly against the releasor, and the burden is on the releasor to establish that the release should be limited"); *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001) ("a release, like any contract, must be construed in accordance with the intent of the parties who executed it")).[6]

Plaintiff's efforts to distort the express terms of the Stipulation betray not only his lack of good faith in attempting to avoid his obligations thereunder, but also his understanding that the parties intended the Stipulation to serve as a waiver by plaintiff of all claims for overtime wages, including under federal law.  Tellingly, in something of a Freudian slip, the heading for that argument in plaintiff's memorandum of law states, "The parties' stipulation applies only to Plaintiff's claims for unpaid overtime and wages arising under federal law" (Pl. Mem. at 8), *i.e.*, precisely the opposite of the position plaintiff now purports to take.

---

[6]    The alleged "exemption" to which plaintiff refers is included not in the Stipulation signed by all parties, but in an undated "Authorization for Wage Resolution" signed by plaintiff only (*see* Declaration of Alexander T. Coleman, dated December 28, 2010 ("Coleman Decl."), Exh. C).  It is axiomatic, however, that where, as here, parties have entered into a written agreement that is unambiguous on its face, they may not attempt to contradict or vary its terms by resort to extrinsic evidence; nor may extrinsic evidence be used to create an ambiguity in such agreement (*see Collins v. E-Magine, LLC*, 291 A.D.2d 350 (N.Y. App. Div. 1st Dep't 2002) ("plaintiff may not, in view of the clear and unambiguous nature of the release, endeavor to vary its terms or to create an ambiguity by resorting to extrinsic evidence"), citing *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162-63 (N.Y. 1990) ("[a] familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms," and "[e]vidence outside the four corners of the document" is "generally inadmissible" to "vary the writing" or "create an ambiguity"); *National Union Fire Insurance Co. v. Walton Insurance Ltd.*, 696 F. Supp. 897, 902 (S.D.N.Y. 1988) (parties' release was unambiguous, and court would not look to extrinsic evidence to ascertain its meaning)).

Also meritless is plaintiff's fallback position that, because the Stipulation was supervised by the NYSDoL – as opposed to the USDoL or a court – it is invalid as a matter of law.  In so arguing, plaintiff purports to rely on nothing more than the *absence* of any decision in this circuit addressing the issue of whether a stipulation supervised by the NYSDoL constitutes an effective waiver of an individual's FLSA claims for unpaid wages or overtime.

As acknowledged by plaintiff, the purpose of the rule requiring waivers of FLSA claims to be contained in a settlement supervised by the USDoL or approved by a court, is to prevent employers from "coerc[ing] employees into settlement and waiver" (Pl. Mem. at 9, citing *Manning v. New York University*, 98 Civ. 3300 (NRB), 2001 WL 963982, *11 (S.D.N.Y. Aug. 22, 2001)).  Here, however, plaintiff does not dispute that the Stipulation was supervised by the NYSDoL, nor does he allege that he was "coerced" into signing the Stipulation, or that his rights were otherwise not adequately safeguarded.  Moreover, as pointed out in Coty's opening papers, while not binding on this Court, there are decisions in other jurisdictions recognizing the effectiveness of such a waiver in circumstances virtually identical to this case (*see, e.g., Lignore v. Hospital of the University of Pennsylvania*, No. 04-5735, 2007 WL 1300733, *3 (E.D. Pa. May 1, 2007), cited in Def. Mem. at 9).

Absent any reasoned basis for permitting plaintiff to avoid the effect of the Stipulation he negotiated and signed under the supervision of the NYSDoL, plaintiff should be held bound to the terms of such Stipulation, and his claim for overtime wages under the FLSA dismissed.

B.     Plaintiff's FLSA Overtime Claim Is Moot

In its opening papers, Coty contended that, because it would be entitled to set-off against any recovery of overtime wages by plaintiff the amount it already paid plaintiff with respect to such wages under the Stipulation, and because such amount exceeds the maximum amount recoverable by plaintiff for such wages in this action, plaintiff's FLSA overtime claim is moot

(*see* Def. Mem. at 9-11).  In response, plaintiff argues – without citation to a single authority, in this circuit or elsewhere – that such a set-off would be improper.  Again, plaintiff is incorrect.

It is axiomatic that, where defendant has already paid plaintiff the amount plaintiff claims is due him (under the terms of an agreement or otherwise), an action by plaintiff to recover that amount cannot be sustained (*see Ross v. Albany Medical Center*, 916 F. Supp. 196, 203 -204 (N.D.N.Y. 1996), *aff'd,* 104 F.3d 351 (2d Cir. 1996) (holding that "plaintiff's federal claim is moot because the judgment entered in [his] state court action has provided him with the maximum monetary relief requested in the present action"); *see also Cover v. American Postal Workers Union-AFL-CIO*, 357 Fed. App'x 336, 338 (2d Cir. 2009) ("[t]o be sure, [plaintiff] cannot recover twice for the same injury")).  Here, the Stipulation plainly delineates $27,108.30 of the total amount paid by Coty thereunder as "overtime" (*see* Sheinfeld Decl., Exh. H).  Not coincidentally, that amount corresponds to the penny to what plaintiff (in his sworn affidavit submitted to the NYSDoL) claimed were "the monies due [him] for overtime" during the entire period he worked at Coty (*see id.*, Exh. G).  Because Coty has already paid plaintiff every dime in overtime plaintiff contends he earned, plaintiff's claim for overtime wages under the FLSA should be dismissed.[7]

With respect to Coty's citation to the district court's opinion in *Martin v. PepsiAmericas, Inc.* in support of its set-off argument (*see* Def. Mem. at 10), it should be noted that, since Coty filed its moving brief, the Fifth Circuit Court of Appeals has vacated that opinion (*see Martin v. PepsiAmericas, Inc.*, No. 09-60896, 2010 WL 5300827 (5th Cir. Dec. 28, 2010)).  Figuring prominently in the Fifth Circuit's reasoning, however, was the fact that, in that case, the amount defendant sought to set-off against plaintiff's FLSA overtime wage claim was part of a general

---

[7]     Indeed, as explained in Coty's opening papers, the amount paid plaintiff for "overtime" under the Stipulation ($27,108.30) actually *exceeds* any amount plaintiff could possibly recover on his FLSA claim herein ($4,183.85), even assuming the inclusion of liquidated (double) damages ($8,367.70) (*see* Def. Mem. at 10-11).

severance agreement, the money and benefits paid under which (as the court expressly pointed out) "were not wage payments, advance or otherwise; indeed, they were not related to [plaintiff's] labors at all" (*id.* at *4).

Here, in contrast, Coty expressly paid plaintiff $27,108.30 for "overtime" under the Stipulation (*see* Sheinfeld Decl., Exh. H).  Plaintiff's argument that Coty is not entitled to set-off the amount it has already paid him – *for the very same overtime wages he seeks to recover herein* – against any recovery of such wages in this action is not only meritless, but, frankly, offensive.

    C.      Plaintiff Cannot Recover for Coty's Alleged
               Failure to Apprise Him of His Rights under the FLSA

Plaintiff concedes in his opposition papers that Coty's alleged "failure to notify" him of his rights under the FLSA is not "recoverable offense *per se*," but asserts that his allegation that Coty failed to notify him of his FLSA rights somehow "highlight[s] Coty's willful conduct" (Pl. Mem. at 7, 12).  Putting aside the inherent illogic of plaintiff's position – *i.e.*, that an employer's failure to notify constitutes evidence of willfulness, as opposed to mere mistake or inadvertence – Coty respectfully submits that, in view of plaintiff's concession, as well as his demonstrated disregard for his prior agreements and representations, this Court should issue an Order dismissing plaintiff's claim for "failure to notify" under the FLSA.

III.

PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED

    A.      Plaintiff Fails to Plead Mail Fraud with Particularity

Despite dismissing as "laughable" Coty's argument that the amended complaint fails to adequately plead what "statements" contained in the 1099 forms provided plaintiff by Coty were "false or misleading" (as required to state a legally cognizable claim for mail fraud under RICO) (Pl. Mem. at 20), plaintiff makes no effort to cure that infirmity.

As plaintiff correctly states, an IRS Form 1099 contains various standard categories of information. Such information includes the Payer's name, address, telephone number and federal identification number, the Recipient's name, address and identification number, the type of income paid (*e.g.*, rent, royalties or other income), the amount of income paid, and the amount of federal and state taxes withheld.[8] Nowhere, however, does plaintiff specify what information inserted by Coty on such forms was "false or misleading." Rather, plaintiff continues to rely on his broad, generalized assertion that the forms themselves were somehow "false or misleading." As discussed in Coty's opening papers, such conclusory allegations are insufficient to state a RICO claim, as a matter of law (Def. Mem. at 13-14; *see, e.g., Leung v. Law*, 387 F. Supp. 2d 105, 114 (E.D.N.Y. 2005) (holding that particularity requirement was not satisfied where plaintiffs "name[d] whole documents, each of which encompasse[d] numerous discreet statements, and allege[d], in vague and sweeping language, that each of [such] documents contained one or more false statements")).

With respect to RICO's requirement that the complaint plead that defendant used the mails to defraud "in furtherance" of an alleged racketeering scheme, plaintiff asserts that, but for Coty's use of the mails, he would not have paid certain taxes, and that this should be deemed to satisfy that requirement (Pl. Mem. at 22). However, plaintiff fails to point to any allegation of fact that would shed light on how Coty's alleged mailing of the 1099s was intended to deceive plaintiff, as required under the statute (*see McLaughlin v. Anderson*, 962 F.2d 187, 190-91 (2d Cir. 1992); *McGee v. State Farm Mutual Auto Ins. Co.*, No. 08-CV-392 (FB)(CLP), 2009 WL 2132439, *5 (E.D.N.Y. July 10, 2009)). Nor does plaintiff offer a reasoned or substantive response to Coty's observation that its provision of the tax forms to plaintiff would have *alerted* him to the alleged misclassification scheme, not *concealed* it (Def. Mem. at 15, citing *Cavallaro*

---

[8]     The Court may take judicial notice of the categories of information set forth on an IRS Form 1099. For the Court's convenience, a copy of a blank 1099 form is attached hereto at Tab A.

13

*v. UMass Memorial Health Care, Inc.*, No. 09-40152-FDS, 2010 WL 3609535, *3-4 (D. Mass. July 2, 2010)).

Further, plaintiff's contention that the mailing of the 1099s was "designed to legitimize" Coty's alleged scheme (Pl. Mem. at 22-23, citing *Leung v. Law*, *supra*) is nonsensical. In *Leung*, plaintiff specifically identified a false statement in a tax return (387 F. Supp. 2d at 114-15), and the court held that, if such statement were made "with an eye towards keeping [plaintiff] from discovering the defendants' fraudulent scheme, then the 'in furtherance' element of the mail fraud statute is present" (*id.* at 116). Here, in contrast, plaintiff is unable to identify any false statement contained in any 1099 form issued him, and, accordingly, his argument that Coty's alleged mailing of the 1099s was intended to prevent him from discovering some alleged scheme, "in furtherance" of that scheme, makes no sense.

Because plaintiff offers nothing more than "conclusions" and a "formulaic recitation" of the elements of a mail fraud claim, and fails to allege facts sufficient to render that claim "plausible on its face," as required to survive a motion under Fed. R. Civ. P 12(b) (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), plaintiff's RICO claim is deficient, and should be dismissed.[9]

B.    Plaintiff Lacks Standing under RICO

In response to Coty's argument that plaintiff is unable to allege that he suffered any injury as a result of the sole RICO predicate act alleged in the amended complaint – *i.e.*, the

---

[9]    Plaintiff's final assertion as to Coty's "fraudulent intent" – *i.e.*, that it "can be easily inferred from the express allegations that both federal and state agencies to review Coty's actions determined that Coty acted in utter bad faith in swindling its employees" (Pl. Mem. at 23) – is baseless. Not surprisingly, plaintiff fails to include any citation for that assertion. Indeed, there is no such allegation in plaintiff's amended complaint, nor is there any indication of any agency determination of "bad faith" or "swindling" in the materials attached to plaintiff's opposition papers (*see* Coleman Decl., Exhs. A, B). Plaintiff's repeated demonstrations, throughout his opposition papers, of his willingness to distort and misrepresent to the Court even the allegations of his own pleadings speak volumes about the merit of his claims in this action.

Company's mailing of 1099 forms to plaintiff (*see* Def. Mem. at 16-17) – plaintiff asserts, without citation to a single legal authority, that "but for" Coty's mailing of the tax forms, he would not have paid certain taxes and contributions. Again, plaintiff's reasoning cannot withstand serious scrutiny.

To be clear, even affording the amended complaint the benefit of every favorable inference, it was Coty's classification of plaintiff as an independent contractor, and not its mailing of tax forms, that "caused" the tax liabilities of which plaintiff purports to complain. As courts have explained, "[a]n act which proximately caused an injury is analytically distinct from one which furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act" (*Leung,* 387 F. Supp. 2d at 122). And, as discussed in Coty's opening papers, a defendant's alleged misclassification of its workers and subsequent failure to withhold payroll taxes "are not RICO predicate acts" (*Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 383 (2d Cir. 2001)).

To accept plaintiff's theory that Coty's mailing of the 1099s constituted the "predicate act" that "caused" his alleged injuries would lead to a number of absurd results. First, it would compel the anomalous conclusion that, had Coty failed to comply with its legal obligation to provide accurate tax information to plaintiff, it would not have violated RICO.[10] Second, it would mean that, had Coty personally handed the forms to plaintiff instead of mailing them, there would have been no RICO violation. Third, and perhaps most significantly, it would turn virtually every FLSA misclassification case in which defendant mailed tax forms to its workers into a RICO violation. Such a result was clearly not intended by the RICO statute, and should not be sanctioned here (*see Vandermark v. City of New York*, 615 F. Supp. 2d 196, 210-11 (S.D.N.Y. 2009) ("[a]lleged civil violations of the FLSA do not amount to racketeering")).

---

[10]   As discussed above, plaintiff has failed to point to any false or misleading information contained on the 1099s issued him by Coty (*see* pp. 12-13, *supra*).

C.    Plaintiff's RICO Claims Are Preempted

As set forth in Coty's moving brief (Def. Mem. at 18), "where a plaintiff's RICO claims are brought alongside other statutes which, like the FLSA, provide comprehensive remedies, . . . plaintiff's RICO claims should be precluded" (*Eldred v. Comforce Corp.*, No. 3:08-CV-1171 (LEK/DEP), 2010 WL 812698, *10 (N.D.N.Y. Mar. 2, 2010) (internal citations, quotation marks and brackets omitted)). "This approach ensures that the artful invocation of controversial civil RICO, particularly when inadequately pleaded, does not endanger the uniform administration of core concerns of the primary enforcement scheme" (*id.*).

In response to this point, plaintiff merely repeats his mantra that his RICO claims are "based on an entirely different set of facts, namely Coty's fraudulent use of the mails to shift tax burdens and contributions to Plaintiff and away from Coty" (Pl. Mem. at 24). Because, as discussed above, however, plaintiff cannot specify any fraudulent statement contained in the 1099s, nor can he explain how Coty's alleged mailings of the 1099s were intended to deceive plaintiff "in furtherance" of an alleged fraudulent scheme, nor can he show that his alleged injuries (*i.e.*, his tax liabilities) were caused by such mailings (as opposed to Coty's alleged misclassification of him as an independent contractor), plaintiff's contention that his RICO claims are not preempted by the FLSA is meritless, and should be rejected.

Plaintiff does not even purport to address the authorities cited by Coty in support of its argument that, to the extent plaintiff alleges injuries based on his alleged incurrence of certain tax liabilities as an independent contractor, his RICO claims are barred by the exclusive administrative schemes contained in the Internal Revenue Code and the Social Security Act (*see* Def. Mem. at 18-19). In addressing a RICO claim virtually identical to plaintiff's in *Gifford v. Meda*, No. 09-cv-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010), the court held (*id.* at *16 (internal citations and quotation marks omitted)):

16

> Plaintiffs' RICO claim, based upon allegations of mail and wire fraud in furtherance of Defendants' conduct in allegedly misclassifying Plaintiffs, rest upon a finding that Defendants' conduct was illegal under the federal tax reporting laws. Bluntly put, no matter how you cut the complaint, the only conceivable "fraud" is the deprivation of plaintiffs' rights under the tax law. Since defendants' liability, under the mail and wire fraud statutes, if any, is wholly dependent on the tax laws, judgment of defendants' conduct is exclusively with the IRS and the SSA.

Concluding that "the comprehensive administrative scheme embodied in the [Internal Revenue Code] and the [Social Security Act] leaves no room for a private action based upon a violation of FICA masquerading as a RICO claim," that court "reject[ed] Plaintiffs' attempt to bypass the remedies available under [such laws] in favor of a treble damage claim, with the prospect of attorneys' fees, under RICO," and dismissed plaintiffs' RICO claims (*id.*).[11]

In sum, no matter how thinly plaintiff tries to slice his RICO claims, they are plainly based on alleged violations of other federal statutes that provide their own comprehensive remedies. Accordingly, plaintiff's RICO claims are preempted by such statutes, and should be dismissed (*Eldred*, 2010 WL 812698 at *10, citing *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634 (2d Cir. 1989)).

D.   Plaintiff's RICO Claim Is Untimely

Plaintiff's argument that his RICO claim is timely is based on the same house of cards underlying each of his arguments in support of that claim, *i.e.*, that his purported "injury" (his tax liabilities as an independent contractor) was "caused" not by Coty's misclassification of him at the outset of his employment in October 2002, but by its mailing of the 1099 forms to him during each year he worked for the Company. For the reasons discussed in the preceding sections, that argument cannot stand.

But, even assuming *arguendo* that Coty's alleged annual mailing of the 1099s to plaintiff

---

[11]    It bears repetition that plaintiff fails to point to a single decision of any court in which a defendant's mailing of accurate tax forms to its workers was held sufficient to sustain a RICO claim.

could be deemed the RICO "predicate act" that "caused" plaintiff's injuries, plaintiff's timeliness argument still fails.   The four-year limitations period for a RICO claim begins to run *not* when the plaintiff learns of the supposed predicate act, but when he "discovers – or reasonably should have discovered – the alleged injury" (*McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008) (internal citations omitted)).

Here, plaintiff admits that he first received a 1099 from Coty on or about January 31, 2003 (*see* Pl. Mem. at 5, 17 & 21; Am. Cmplt., ¶¶ 21, 22).   That first 1099 would have led any reasonable person to discover the alleged "injuries" of which plaintiff now purports to complain, *i.e.*, that he was incurring certain tax liabilities in connection with his work for Coty as a result of his classification as an independent contractor.   Accordingly, to be timely, plaintiff would have to have filed his RICO claim within four years of that date, *i.e.*, on or before January 31, 2007, which, it is undisputed, he did not.   That his alleged "injuries" may have continued throughout the time plaintiff worked for Coty cannot serve to indefinitely extend the limitations period (*see Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 59 (2d Cir. 1998) (RICO claim time-barred because issuance of annual statements by mail and collection of annual fees concerning allegedly fraudulent investment vehicle were not new injuries but rather "simply a part of the alleged scheme" that commenced at the outset of the investment relationship)).

Because, in addition to all the other infirmities in that claim discussed above, plaintiff's RICO claim is also untimely, it should be dismissed.

IV.

PLAINTIFF SHOULD NOT BE GRANTED LEAVE
TO AMEND HIS COMPLAINT A SECOND TIME

Finally, plaintiff submits that, should any of his claims be determined insufficient, he should be granted leave to amend his complaint once again (Pl. Mem. at 25).

Where not only was plaintiff previously granted leave to amend his complaint, but such

leave was granted (and amendment filed) following Coty's submission of a letter (in accordance with the Court's rules) setting forth the bases for each of its arguments for dismissal of the complaint, plaintiff's request for leave to amend a second time is not warranted. Such *seriatim* amendments are especially disfavored in circumstances like this case, where plaintiff (who has not worked for Coty since October 2008) does not even purport to allege the discovery of new facts or evidence that would impact his claims (*see Endovasc, Ltd. v. J.P. Turner & Co., LLC*, 169 Fed. App'x 655, 657-58 (2d Cir. 2006) (affirming denial of motion for leave to amend where plaintiff had already been allowed to amend complaint once "to plead fraud with greater specificity . . . in light of defendant's dismissal papers"); *Williams v. Time Warner Inc.*, No. 09 Civ. 2962 (RJS), 2010 WL 846970, *7-8 (S.D.N.Y. Mar. 3, 2010) (denying leave to amend where plaintiff was previously afforded opportunity to amend in face of defendant's dismissal arguments, and failed to indicate what new facts an amended complaint would allege)).

<u>Conclusion</u>

For all of the reasons stated above, as well as in its moving memorandum of law, Coty respectfully requests an Order dismissing the amended complaint in its entirety, with prejudice, and granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     January 11, 2011

                            Respectfully submitted,

                            WINSTON & STRAWN LLP

                            By: /s/ Stephen L. Sheinfeld
                                Stephen L. Sheinfeld
                                William M. Sunkel
                            200 Park Avenue
                            New York, New York 10166
                            (212) 294-6700
                            (212) 294-4700 (facsimile)
                            ssheinfeld@winston.com

                            Attorneys for Defendant

# TAB A

**9595**   ☐ VOID   ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|---|
| | | $ | **2010** | Miscellaneous Income |
| | | 2 Royalties | Form **1099-MISC** | |
| | | $ | | |
| | | 3 Other income | 4 Federal income tax withheld | Copy A |
| PAYER'S federal identification number | RECIPIENT'S identification number | $ | $ | For |
| | | 5 Fishing boat proceeds | 6 Medical and health care payments | Internal Revenue Service Center |
| | | $ | $ | File with Form 1096. |
| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | For Privacy Act and Paperwork Reduction Act Notice, see the 2010 General Instructions for Certain Information Returns. |
| | | $ | $ | |
| Street address (including apt. no.) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds | |
| City, state, and ZIP code | | 11 | 12 | |
| Account number (see instructions) | 2nd TIN not. ☐ | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
| | | $ | $ | |
| 15a Section 409A deferrals | 15b Section 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
| $ | $ | $ | | $ |
| | | $ | | $ |

Form **1099-MISC**        Cat. No. 14425J        Department of the Treasury - Internal Revenue Service

Do Not Cut or Separate Forms on This Page  —  Do Not Cut or Separate Forms on This Page

☐ VOID   ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents $ | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|---|
| | | 2 Royalties $ | 2010 Form 1099-MISC | |
| | | 3 Other income $ | 4 Federal income tax withheld $ | Copy 1 |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | For State Tax Department |
| RECIPIENT'S name | | 7 Nonemployee compensation $ | 8 Substitute payments in lieu of dividends or interest $ | |
| Street address (including apt. no.) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | |
| City, state, and ZIP code | | 11 | 12 | |
| Account number (see instructions) | | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |

Form **1099-MISC**                                    Department of the Treasury - Internal Revenue Service

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents<br><br>$ | OMB No. 1545-0115<br><br>**20**10<br><br>Form **1099-MISC** | Miscellaneous<br>Income |
|---|---|---|---|---|
| | | 2 Royalties<br><br>$ | | |
| | | 3 Other income<br><br>$ | 4 Federal income tax withheld<br><br>$ | Copy B<br>For Recipient |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds<br><br>$ | 6 Medical and health care payments<br><br>$ | |
| RECIPIENT'S name | | 7 Nonemployee compensation<br><br>$ | 8 Substitute payments in lieu of dividends or interest<br><br>$ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| Street address (including apt. no.) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds | |
| City, state, and ZIP code | | 11 | 12 | |
| Account number (see instructions) | | 13 Excess golden parachute payments<br><br>$ | 14 Gross proceeds paid to an attorney<br><br>$ | |
| 15a Section 409A deferrals<br><br>$ | 15b Section 409A income<br><br>$ | 16 State tax withheld<br><br>$<br>$ | 17 State/Payer's state no. | 18 State income<br><br>$<br>$ |

Form **1099-MISC**                    (keep for your records)                    Department of the Treasury - Internal Revenue Service

## Instructions for Recipient

**Recipient's identification number.** For your protection, this form may show only the last four digits of your social security number (SSN) , individual taxpayer identification number (ITIN), or adoption taxpayer identification number (ATIN). However, the issuer has reported your complete identification number to the IRS and, where applicable, to state and/or local governments.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Amounts shown may be subject to self-employment (SE) tax.** If your net income from self-employment is $400 or more, you must file a return and compute your SE tax on Schedule SE (Form 1040). See Pub. 334 for more information. If no income or social security and Medicare taxes were withheld and you are still receiving these payments, see Form 1040-ES. Individuals must report these amounts as explained in the box 7 instructions on this page. Corporations, fiduciaries, or partnerships must report the amounts on the proper line of their tax returns.

**Form 1099-MISC incorrect?** If this form is incorrect or has been issued in error, contact the payer. If you cannot get this form corrected, attach an explanation to your tax return and report your income correctly.

**Boxes 1 and 2.** Report rents from real estate on Schedule E (Form 1040). However, report rents on Schedule C or C-EZ (Form 1040) if you provided significant services to the tenant, sold real estate as a business, rented personal property as a business, or you and your spouse elected to be treated as a qualified joint venture. Report royalties from oil, gas, or mineral properties on Schedule E (Form 1040). However, report payments for a working interest as explained in the box 7 instructions. For royalties on timber, coal, and iron ore, see Pub. 544.

**Box 3.** Generally, report this amount on the "Other income" line of Form 1040 and identify the payment. The amount shown may be payments received as the beneficiary of a deceased employee, prizes, awards, taxable damages, Indian gaming profits, or other taxable income. If it is trade or business income, report this amount on Schedule C, C-EZ, or F (Form 1040).

**Box 4.** Shows backup withholding or withholding on Indian gaming profits. Generally, a payer must backup withhold at a 28% rate if you did not furnish your taxpayer identification number. See Form W-9 and Pub. 505 for more information. Report this amount on your income tax return as tax withheld.

**Box 5.** An amount in this box means the fishing boat operator considers you self-employed. Report this amount on Schedule C or C-EZ (Form 1040). See Pub. 334.

**Box 6.** For individuals, report on Schedule C or C-EZ (Form 1040).

**Box 7.** Shows nonemployee compensation. If you are in the trade or business of catching fish, box 7 may show cash you received for the sale of fish. If payments in this box are SE income, report this amount on Schedule C, C-EZ, or F (Form 1040), and complete Schedule SE (Form 1040). You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare tax. If you believe you are an employee and cannot get the payer to correct this form, report the amount from box 7 on Form 1040, line 7 (or Form 1040NR, line 8). You must also complete Form 8919 and attach it to your return.

**Box 8.** Shows substitute payments in lieu of dividends or tax-exempt interest received by your broker on your behalf as a result of a loan of your securities. Report on the "Other income" line of Form 1040.

**Box 9.** If checked, $5,000 or more of sales of consumer products was paid to you on a buy-sell, deposit-commission, or other basis. A dollar amount does not have to be shown. Generally, report any income from your sale of these products on Schedule C or C-EZ (Form 1040).

**Box 10.** Report this amount on line 8 of Schedule F (Form 1040).

**Box 13.** Shows your total compensation of excess golden parachute payments subject to a 20% excise tax. See the Form 1040 instructions for where to report.

**Box 14.** Shows gross proceeds paid to an attorney in connection with legal services. Report only the taxable part as income on your return.

**Box 15a.** May show current year deferrals as a nonemployee under a nonqualified deferred compensation (NQDC) plan that is subject to the requirements of section 409A, plus any earnings on current and prior year deferrals.

**Box 15b.** Shows income as a nonemployee under a NQDC plan that does not meet the requirements of section 409A. This amount is also included in box 7 as nonemployee compensation. Any amount included in box 15a that is currently taxable is also included in this box. This income is also subject to a substantial additional tax to be reported on Form 1040. See "Total Tax" in the Form 1040 instructions.

**Boxes 16-18.** Shows state or local income tax withheld from the payments.

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents <br> $ | OMB No. 1545-0115 | **Miscellaneous Income** |
|---|---|---|---|---|
| | | 2 Royalties <br> $ | 20**10** <br> Form **1099-MISC** | |
| | | 3 Other income <br> $ | 4 Federal income tax withheld <br> $ | |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds <br> $ | 6 Medical and health care payments <br> $ | **Copy 2** <br> **To be filed with recipient's state income tax return, when required.** |
| RECIPIENT'S name | | 7 Nonemployee compensation <br> $ | 8 Substitute payments in lieu of dividends or interest <br> $ | |
| Street address (including apt. no.) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds <br> $ | |
| City, state, and ZIP code | | 11 | 12 | |
| Account number (see instructions) | | 13 Excess golden parachute payments <br> $ | 14 Gross proceeds paid to an attorney <br> $ | |
| **15a** Section 409A deferrals <br> $ | **15b** Section 409A income <br> $ | 16 State tax withheld <br> $ <br> $ | 17 State/Payer's state no. | 18 State income <br> $ <br> $ |

Form **1099-MISC**                                                                 Department of the Treasury - Internal Revenue Service

☐ VOID   ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents<br><br>$ | OMB No. 1545-0115<br><br>20**10**<br><br>Form **1099-MISC** | Miscellaneous Income |
| | | 2 Royalties<br><br>$ | | |
| | | 3 Other income<br><br>$ | 4 Federal income tax withheld<br><br>$ | **Copy C** |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds<br><br>$ | 6 Medical and health care payments<br><br>$ | **For Payer** |
| RECIPIENT'S name | | 7 Nonemployee compensation<br><br>$ | 8 Substitute payments in lieu of dividends or interest<br><br>$ | For Privacy Act and Paperwork Reduction Act Notice, see the **2010 General Instructions for Certain Information Returns.** |
| Street address (including apt. no.) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds<br><br>$ | |
| City, state, and ZIP code | | 11 | 12 | |
| Account number (see instructions) | 2nd TIN not. ☐ | 13 Excess golden parachute payments<br><br>$ | 14 Gross proceeds paid to an attorney<br><br>$ | |
| **15a** Section 409A deferrals<br><br>$ | **15b** Section 409A income<br><br>$ | 16 State tax withheld<br><br>$<br>$ | 17 State/Payer's state no. | 18 State income<br><br>$<br>$ |

Form **1099-MISC**                                Department of the Treasury - Internal Revenue Service

# Instructions for Payer

General and specific form instructions are provided as separate products. The products you should use to complete Form 1099-MISC are the 2010 General Instructions for Certain Information Returns and the 2010 Instructions for Form 1099-MISC. A chart in the general instructions gives a quick guide to which form must be filed to report a particular payment. To order these instructions and additional forms, visit the IRS website at *www.irs.gov* or call 1-800-TAX-FORM (1-800-829-3676).

**Caution:** *Because paper forms are scanned during processing, you cannot file with the IRS Forms 1096, 1098, 1099, 3921, 3922, or 5498 that you print from the IRS website.*

**Due dates.** Furnish Copy B of this form to the recipient by January 31, 2011. The due date is extended to February 15, 2011, if you are reporting payments in boxes 8 or 14.

File Copy A of this form with the IRS by February 28, 2011. If you file electronically, the due date is March 31, 2011. To file electronically, you must have software that generates a file according to the specifications in Pub. 1220, Specifications for Filing Forms 1098, 1099, 3921, 3922, 5498, 8935, and W-2G Electronically. IRS does not provide a fill-in form option.

**Need help?** If you have questions about reporting on Form 1099-MISC, call the information reporting customer service site toll free at 1-866-455-7438 or 304-263-8700 (not toll free). For TTY/TDD equipment, call 304-579-4827 (not toll free). The hours of operation are Monday through Friday 8:30 a.m. to 4:30 p.m., Eastern time.

## Attention:

This form is provided for informational purposes only. Copy A appears in red, similar to the official IRS form. Do **not** file copy A downloaded from this website. The official printed version of this IRS form is scannable, but the online version of it, printed from this website, is not. A penalty of $50 per information return may be imposed for filing forms that cannot be scanned.

To order official IRS forms, call 1-800-TAX-FORM (1-800-829-3676) or Order Information Returns and Employer Returns Online, and we'll mail you the scannable forms and other products.

See IRS Publications 1141, 1167, 1179 and other IRS resources for information about printing these tax forms.